BURLEY A. DYE, Appellant, v. SCHOOL DISTRICT No. 32 OF PULASKI COUNTY, MISSOURI, and MELVIN CORDRY, C. O. HILL and E. M. DYE, as Directors of said District.—No. 39771.—195 S. W. (2d) 874.

Court en Banc, July 8, 1946.

232

*Cusick & Robinson* for appellant:

*T. A. Shockley* for respondents.

ELLISON, J.—The first question to be decided is whether this court has jurisdiction of this appeal under Sec. 12, Art. VI, Const. Mo. 1875, on the ground that a constitutional question is involved. The appeal was taken on February 26, 1945, to the Springfield Court of Appeals. That court transferred the cause to this court, and in a short opinion [Dye v. School Dist., 190 S. W. (2d) 467] pointed out, among other things, that after the appeal had been taken the parties filed a written stipulation in the trial court conceding the respondents had there raised a constitutional question which they would present on appeal, and agreeing that the cause be transferred to this court, subject to our decision on our jurisdiction. It is well established, as the Court of Appeals held, that appellate jurisdiction cannot be conferred by mere consent. Higgins v. Smith, 346 Mo.

1044, 1047(3), 144 S. W. (2d) 149, 151(4). So we must inquire into the point regardless of their agreement.

As will be noted, the aforesaid stipulation says the *respondents* raised constitutional questions below. And that is a fact. But they won the case and did not appeal. It is the *appellant* who is invoking our jurisdiction. A banc decision, Schildnecht v. City of Joplin, 327 Mo. 126, 128(2), 35 S. W. (2d) 35, 36(3), in ruling on a similar question quotes a statement from two earlier ■ cases that constitutional[1] *"protection* must have been denied *the party invoking it* by that (trial) court, and *such* party must have been the losing party in the trial court.'' Now the appellant here, being the losing party below, that far comes within the quoted formula: but he did not raise the point and seek constitutional *protection* there. On the contrary, he maintained the Constitution did *not* apply. In so doing he took the negative side on the constitutional *question* raised by respondents. Having lost, he appealed and brings the same question here. Consequently, we believe he is entitled to invoke our jurisdiction on the ground that a constitutional question is involved, if it appears from the record that the trial court ruled the case on that question. To that extent we think the Schildnecht case should be modified or explained. The trial court did so decide the case. But to demonstrate that it is necessary to state many of the facts; and since we have concluded the cause is properly here, we shall state all of them now.

The appellant at the time here involved was about 50 years old and the holder of a second grade teacher's certificate under Sec. 10625 in Pulaski county. He was teacher for the school year 1943-44 in School District No. 32 of the county, a rural district five miles west of Waynesville. The respondents were the then members of the school board, and the district, itself. Appellant's employment for that school year was under a written contract dated August 5, 1943, stipulating a salary of $100 per month or $800 per year. The statute[2] provides that ''except as . . . otherwise provided by law'' it shall be the duty of every school board ''to notify each and every such teacher in writing concerning his or her re-employment or lack thereof on or before the fifteenth day of April of the year in which the contract then in force expires. Failure on the part of a board to give such notice *shall constitute re-employment on the same terms* . . .'' The respondent school board failed to give the statutory notice to the appellant that he had not been re-employed, but nevertheless refused to employ him during the school year 1944-45. He thereupon brought this suit against the school district and its directors on July 17, 1944, for $800 damages for breach of the re-employment contract.

[1]Italics in quotations are ours unless otherwise stated; and all references to our statutes are to R. S. 1939 and same section number in Mo. R. S. A. unless otherwise indicated.

[2]Sec. 10342A, Laws Mo. 1943, pp. 889, 890, Mo. R. S. A. Sec. 10342a.

The respondents had filed an answer at the return term in October, but various technical proceedings carried the case over to the next term, when an ·amended answer was filed on January 16, 1945, after the new Civil Code[3] had gone into effect on January 1. No constitutional questions were raised therein, but on the same day respondents also filed a separate motion to dismiss the petition, which for the first time challenged appellant's whole pleaded cause of action on two constitutional grounds: (1)' that Sec. 10342A, supra, "is unconstitutional . . . and against public policy"; (2) that the Constitution prohibits any county or school district from contracting any obligation in excess of the anticipated revenue for the year. This assignment necessarily referred to Sec. 12, ·Art. X, Const. 1875. Generally speaking, this method of raising the foregoing questions by motions was permissible under Sec's 61, 62, '66 of the Code. Whether the facts challenged by the second assignment appeared on the face of the petition is another question. But it was not raised.

When the motion to dismiss was called up the court announced it would be taken with the case, and a jury was waived and the cause submitted to the court on the merits. The issues on the merits tendered by the amended answer filed were as follows. It contained a general denial of everything except that the appellant did teach the school in 1943-44, and that the personal defendants were the school directors. And it affirmatively alleged: (1) that the respondents were not required by law to notify the appellant of his nonemployment for 1944-45, because he was not legally entitled to teach in the district that year; (2) that during the year 1943-44 when he did teach the average daily attendance was only nine pupils; (3) that in a school of that class and attendance the respondents were legally required to employ a teacher for the year 1944-45 who had 60 hours college credits and to certify their compliance with that requirement to the State Department of Education, in order to obtain a State apportionment of school funds to pay his salary, there being no other funds available for that purpose that year—of which facts they were advised by a representative of the State Superintendent of Schools; (4) that because of the foregoing facts they did employ another teacher for 1944-45 who had the required college credits; (5) that the appellant held only a county certificate and had no college hours credits, and was not entitled to teach in the school.

In addition to the foregoing facts the evidence showed the following. When the school board failed to notify the appellant of his re-employment he looked for another school, and did make partial arrangements thereto. As a sidelight, it appears that at the school election that spring school directors unfriendly to him had been elected. The

[3]Laws Mo. 1943, pp. 353, 354, 374-5; Sec's 3, 59, 61, 62, 65, 66, Mo. R. S. A. Sec's 847.3, 847.59, 847.61, 847.62, 847.65, 847.66.

board members (respondents) were ignorant of the then new Sec. 10342A. But in April, 1944, a State School Supervisor, Mr. Guenther, had advised appellant of his rights under the statute. And on May 13, 1944, he served a written notice on respondents that he had accepted re-employment under the previous year's contract. This was the same day the board employed another teacher. She was the niece of appellant and of one of his brothers who was a member of the school board and opposed to appellant's re-employment.

The new teacher began to teach on the first Monday in August. She taught two weeks and then accepted an offer to teach in Waynesville, the respondents at the same time making an arrangement to have the pupils of the district transported to Waynesville by bus, and paying a tuition charge there of 40¢ per pupil per day, on average daily attendance. On the last Monday in August, the first day of the term under his old contract, appellant went to the district school house and found the door padlocked. He had the sheriff open the door and for seven weeks taught eight or ten pupils who came to that school. But the respondents refused to pay him or to furnish supplies, so he quit and brought this suit.

Respondents E. O. Hill, who was president of the board, and E. M. Dye, another member who was appellant's brother, both testified substantially alike. They said they had a conference with a State supervisor of schools, Mr. Guenther. It was in the first part of May, before they employed the female teacher on May 13. There was only that one conference. Mr. Guenther asked them if they intended to reemploy the old teacher again and they told him they did not. He asked if they could get a teacher with credit for 60 hours of college work, and they said they could. He directed them to check their school apportionment and report to him. They did that and he told them they could pay as high as $110 or $115 a month for such a teacher, and he would approve a top apportionment for them. They said their purpose in seeking a teacher with 60 college hours was to get a higher apportionment of school money. They had had an apportionment the previous year when appellant taught the school, but the average attendance had dropped below 15. Mr. Hill asserted the law provides that when the average attendance is below 15 the teacher must have at least 60 college hours credit. They said they sent the pupils to Waynesville by bus because it was cheaper and there was a scarcity of teachers.

In rebuttal Mr. Guenther, the State school supervisor, just referred to, testified that he had a preliminary meeting with Mr. Underwood, the County Superintendent of Schools and the appellant on April 15, 1944. He was hazy as to whether any of the respondents were present. The meeting concerned the school quota. The school had been approved for several years, including 1943-44 when appellant

was teacher, and there was no question about his qualifications at the conference, or talk about getting a new teacher. He had always been approved, and it was Mr. Guenther's understanding that he would be employed the next year.

The witness went on to say the Department of Education classifies rural schools as 1st class, 2nd class and unclassified. The instant school was the latter. The policy for a number of years had been to fix the minimum qualifications for the teacher of a 1st class school at 60 college hours; for a 2nd class school at 30 hours; and for an unclassified school a four-year high school course made the teacher eligible. Nevertheless there was a ruling of the Department that an unclassified school with an average daily attendance below 8 or 10 required a teacher with from 50 to 60 college hours. But the requirement had to be lowered during the emergency (of war?) because enough of those teachers could not be obtained. He approved the instant school for its equalization quota thinking the appellant would be the teacher, and after considering the attendance and general conditions. He returned to Pulaski county for another conference in May. He couldn't recall that members of the school board were present or that they said they were employing a teacher with 63 hours college credits; he didn't think they did. The equalization quota he allowed the school was $750—that is, enough state funds in addition to what they had on hand to make $750. Boiled down, this witness' vague testimony shows at least that at the time he hadn't heard anything about displacing appellant, or the present controversy.

Mr. Underwood, the County Superintendent of Schools for 6 terms testified he thought two members of the school board and the appellant were present at the April conferences. He, himself, was not present at the one in May. But it was merely a re-check of what had been arranged at the first meeting. It was understood Mr. Dye was to be the teacher. Mr. Guenther explained about the new Section 10342A, and that since the school board had not given appellant a notice that his services were terminated, he would hold over for the next year. His qualifications were unquestioned. This witness, as County Superintendent, had issued to appellant the teacher's certificate that he had.

Mr. L. J. Gladden, a former County Superintendent of Schools in Pulaski county from 1909 to 1919, testified that appellant had taught in the Bloodland Consolidated District during the witness' tenure and was approved as teacher for that district. Appellant introduced a summary of his credits for courses taken in 1911, 1912 and 1915, in twenty-three subjects, while attending what used to be called "Normal Schools" at Swedeborg, Bloodland and Richland, Missouri. The Acting Registrar of the State Teachers College at Springfield appraised the work and certified thereon that it was the equivalent of 63.75 college hours.

At the close of the evidence and after the arguments of counsel, the court dictated its findings to the court reporter at the plaintiff's request. In factual substance and legal effect they found that the appellant came within Sec. 10342A and was entitled to notice thereunder, but that the respondents failed to give it; that the respondents employed another teacher for two weeks, and then sent the pupils to the Waynesville school by bus. Then the findings continued:

"that the expense of transporting the pupils to the Waynesville Consolidated School District and their tuition therein will exhaust all of the revenue on hand and provided for the school year ending June 30, 1945, and the payment of plaintiff would exceed the constitutional limit, and the Court finds that all the funds in this school district are trust funds for the benefit of the pupils in that district and that to divert it to any other cause would be a violation of the constitution and laws of this State, and therefore the issues are found for defendants."

After so finding, the court rendererd a formal general judgment for respondents, containing a general finding of the facts in their favor. As already forecast, we agree with the Springfield Court of Appeals that the trial court by the quoted finding did pass on a constitutional question as a basis for its decision; and we hold this entitles the appellant to a review of the case in this court. The cause was tried without a jury beginning on January 16, 1945. Our new Civil Code went in effect at that time.[4] Under Sec. 114(b) and (ç) thereof it was the duty of the trial court on request of either party to render (as it did) "a brief opinion containing a statement of the grounds for its decision." We have the right to consider that opinion in ruling the cause here; and it is our duty to "review the case upon both the law and the evidence as in suits of an equitable nature."

There is little or no dispute about the basic facts so far as concerns the appellant's side of the controversy. The trial court was well justified in concluding he made a prima facie case. On the respondents' side, there is a question on only one main fact—what the State school supervisor, Mr. Guenther, told the two school directors Messrs. Hill and Dye. It was his impression that they didn't talk to him in May—at least not about employing a new teacher. Mr. Underwood did not attend that conference. He thought the two directors were present at the April conference, when it was assumed the appellant would be re-employed. The two directors said they went to only one conference, in May, and that Mr. Guenther encouraged the employment of a new teacher credited with 60 college hours, and promised to allow them a top apportionment quota if they did. One of the directors, Mr. Hill, confidently asserted the law provides that

[4]Laws Mo. 1943, pp. 353, 357, Sec. 3; Mo. R. S. A. Sec. 847.3.

when the average attendance is below 15 the teacher must have 60 college hours credit. Mr. Guenther conceded there was a departmental ruling making approximately that requirement, but said it had been relaxed.

■ Respondents' first contention is that the application of Sec. 10342A, supra, to appellant's 1943-44 teacher's contract dated August 5, 1943, violates Sec. 15, Art. II and Sec. 19, Art. XII, Const. Mo. 1875 because it makes the statute retrospective in operation. This contention is based on the ground that the new statute, approved April 23, 1943, did not take effect until November 22, 1943, ninety days after the adjournment of the enacting General Assembly, by virtue of the constitutional amendment of Sec. 36, Art. IV, Const. Mo. 1875 adopted April 6, 1943, and Sec. 659, R. S. 1939, as ruled in an opinion of the Attorney General, Laws Mo. 1943, p. 1088. It is doubtful if this constitutional question was sufficiently pleaded, but it was raised below and we shall decide it.

Respondents' view is that the provision of Sec. 10342A extending a teacher's contract for another year in the circumstances stated therein operates retrospectively and changes the contract, itself, by imposing a new duty and making its term two years instead of one. We do not think so. A retrospective law is one that relates back to, and gives to a previous transaction, some different legal effect from that which it had under the law when it occurred. A statute is not retrospective merely because it relates to antecedent transactions, where it does not change their legal effect.[5] Here, the original contract itself was not affected, and the appellant is not complaining. The new law merely imposed a statutory duty on both parties to give notice of its continuance or not. The public interest was involved. The respondents had almost five months in which to give notice after the statute became operative. It is necessary that such arrangements be made in advance. The State, with respect to its school boards, had the right to waive or impair its own vested rights, if any.[6]

■ The second point made by respondents is that even if Sec. 10342A was in force at the time, it did not apply to the facts of this case. Their brief points to the opening words of the section, "except as may be otherwise provided by law", and asserts that phrase limits all the rest of the statute. It is their view that the requirement of 60 college hours credit was a qualifying *legal* requirement for the teacher of a school with less than 15 pupils; and that appellant did not meet it and consequently is not protected by the statute. There are several answers to this contention. First, the appellant proved he was credited with the equivalent of 63.75 college hours. This

[5]12 C. J. p. 1084, Sec. 778; 16 C. J. S. p. 856, Sec. 414.
[6]12 C. J. p. 1086, Sec. 781; 16 C. J. S. p. 864, Sec. 417; Graham Paper Co. v. Gehner, 332 Mo. 155, 161(5, 6), 59 S. W. (2d) 49, 51(5,6).

 was certified by the acting registrar of the State Teachers College at Springfield, a State educational institution authorized to issue diplomas conferring on the holder the right to teach in this State without further examination, that is, for life. Sec's 10752, 10764.

The respondents maintain these were not true *college* hours because the work had been done in old time ''Normal Schools.'' But our statutes do not define the word college in the expression ''college hours.'' Ordinarily, there is no clear-cut distinction between the words college and school. The latter does not necessarily imply a lower grade institution.[7] Thus, pedagogic instruction in our highest State institution of learning, the University of Missouri, is given in the *School* of Education, Sec. 10764. Our present five State Teachers Colleges were formerly called Normal Schools, Sec. 10752. And we have ''Junior Colleges'', Sec. 10565, and ''Teachers Training Schools''. Sec. 10572. It has been provided for many years in (now) Sec. 10633 that grades made in the summer terms of the State educational institutions, and in ''such other schools as may be approved by the State Board of Education''[8] shall, under prescribed conditions, be accepted by the State Superintendent in lieu of examination. It is to be inferred the registrar of the State Teachers College at Springfield would not have certified the appellant's work as the equivalent of 63.75 college hours unless it had been done in institutions accredited by the State Board of Education. This assignment cannot be sustained.

 Again, even if appellant was not entitled to credit for the 63.75 college hours, that requirement was not legal, in the sense of statutory. Mr. Guenther only said it was a departmental requirement which had been relaxed. And in any event, a mere departmental regulation could not override the statute, Sec. 10342A. The minimum qualifications for teachers are prescribed by Sec. 10627. A four year high school course, or its equivalent, is enough. And the County Superintendent may examine teachers and grant certificates to teach in his county, the grade of the certificate depending on the grades received in the examinations on prescribed subjects, Sec. 10625. The school board could not dismiss the teacher. Sec. 10343. And the County Superintendent was the sole judge of his qualifications.[9] There are two statutes which make the amount of State money a school may receive vary somewhat with the pupil attendance and the

---

[7] 11 C. J. p. 972, Sec. 1; 14 C. J. S. p. 1327, Sec. 1; 7 Words & Phrases (Perm. Ed.) "college", pp. 622, 624; Roach v. The Board of President and Directors, etc., 77 Mo. 484, 487.

[8] Sec. 10663. Composed of the state superintendent of schools, the governor, secretary of state and attorney general.

[9] Tate v. School Dist. No. 11, Gentry County, 324 Mo. 477, 505(7), 23 S. W. (2d) 1013, 1026(11), 70 A. L. R. 771.

grade of the teacher's certificate: Sec's 10390 and 10454 (Laws Mo. 1943, p. 906). But there is nothing in either statute disqualifying a teacher if he lacks credit for 60 college hours. We rule this assignment against the respondents.

 This brings us to respondents' third and last defense, under Sec. 12, Art. X, Const. 1875, which forbids any school district "to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year," without a vote of the people. The county clerk's testimony and records showed the anticipated income of the school district, as computed on or about July 17, 1944, was $1020. On similar figures the previous year, out of which appellant's $800 salary for that year had been paid, there remained a surplus of $58.73. The district had levied a tax of 40¢ on the $100, or a total assessed valuation of $64,-915, which levy was the maximum under Sec. 11, Art. X, Const. 1875 without a vote of the tax paying voters. We shall not go into the other detailed sources of revenue. They will be found in Sec's 10390 and 10454, supra. And the burden of sustaining this constitutional issue on the facts was on the respondents, who raised it.

Nevertheless the trial court ruled on legal grounds that "the expense of transporting the pupils to the Waynesville Consolidated School District and their tuition therein will exhaust all of the revenue on hand and provided for the school year ending June 30, 1945, and the payment to plaintiff would exceed the constitutional limit." But that financial outlay was not an existing (or even an anticipated) debt of the district when appellant was automatically re-employed under Sec. 10342A and accepted the extended contract on May 13, 1944. The Waynesville arrangement was not made until the middle of August, and it was illegal anyway so far as appellant was concerned, because the concluding part of Sec. 10342A provides that if the school board desire to do that they must give the teacher written notice of the termination of his contract not later than July 1, which they failed to do. A school board cannot breach a valid contract merely by making some new arrangement, no matter how legal it may otherwise be. Boswell v. Consolidated School Dist. No. 8 of Newton County (Mo. App.), 10 S. W. (2d) 665, 668(10). If they lock the school house door and prevent the teacher from performing his contract he can quit and sue. Wood v. Consolidated School Dist. No. 13 (Mo. App.), 7 S. W. (2d) 1018, 1021(5).

And if the claim is otherwise valid a court cannot deny judgment merely because of the difficulty of collecting thereon. State ex rel. Hufft v. Knight (Mo. App.), 121 S. W. (2d) 762, 764(10); State ex rel. Wood v. Hamilton (Mo. App.), 136 S. W. (2d) 699, 701(1); State ex rel. Black v. Renner (Mo. App.), 148 S. W. (2d) 809, 811(3); Security State Bank v. Dent County, 345 Mo. 1050, 1054(4), 137 S. W. (2d) 960, 962(2).

Under Sec. 114d of the new Code,[10] it is our duty to review the case as one of an equitable nature, giving due regard to the opportunity of the chancellor to judge the credibility of the witnesses, and not setting aside the judgment "unless clearly erroneous." We do not regard this case as one turning on the credibility of the witnesses. It turns on questions of law. In our opinion the judgment below on the case as presented was wrong for the reasons stated. Accordingly, the judgment is reversed and the cause remanded with directions to enter judgment for the plaintiff for the sum of $800 and costs. All concur.

---

[10]Laws Mo 1943, pp. 353, 388; Mo. R. S. A. Sec. 847.114(d).