Milton D. MAGENHEIM, (Plaintiff) Appellant,

v.

BOARD OF EDUCATION OF the SCHOOL DISTRICT OF RIVERVIEW GARDENS, and William R. Pelster, William Goulding, E. W. Nielson, Jr., Vernon Hixson, Donald P. Shine, and H. Ken Nelson, as Members of the Board of Education of the School District of Riverview Gardens, (Defendants) Respondents.

No. 30833.

St. Louis Court of Appeals.

Missouri.

June 14, 1961.

Motion for Rehearing or for Transfer to Supreme Court Denied July 11, 1961.

410

Paul W. Preisler, St. Louis, for appellant.

Aubrey B. Hamilton, St. Louis, for respondents.

ELGIN T. FULLER, Special Judge.

This cause was transferred to this court by the Supreme Court. The Supreme Court, finding that a construction of the Constitution of the United States or of this state was not presented and preserved for determination within the meaning of Article V, Sec-

tion 3 of the Constitution of Missouri, V.A.M.S., transferred it to this Court. See Magenheim v. Board of Education of School District of Riverview Gardens et al., Mo., 340 S.W.2d 619.

Appellant-Plaintiff, Milton D. Magenheim, a school teacher, filed his petition June 30, 1959, against The Board of Education of the Town School District of Riverview Gardens and the six members of the Board. The petition is in two counts.

The first count seeks damages for breach of contract by the defendants, in that the defendants failed to continue the employment of plaintiff for the school year 1959–1960. Plaintiff contends that under the provision of the written contract executed by the parties April 9, 1958, and the 1958 revised Salary Schedule For Teachers of the School District of Riverview Gardens, St. Louis County, Missouri, adopted by the Board of Education, he acquired a continuing or permanent tenure as a teacher with the respondent-defendant District, and that the defendants must continually employ and issue to plaintiff a teaching contract from year to year, revised as to salary according to the 1958 revised Salary Schedule. Plaintiff urges that Paragraph 5 of the 1958 revised Salary Schedule creates the commonly called "tenure contract." Plaintiff contends that the Board of Education was required, under Paragraph 5 of the 1958 revised Salary Schedule to notify him in writing of his deficiencies and to give him an opportunity to improve before his services as a teacher could be terminated. He seeks in Count I an order directing defendants to restore him to his teacher's position, or, in the alternative, damages in the sum of $6,800, his salary under the Salary Schedule for 1959–1960, and for such sums as due him in each succeeding year thereafter for the alleged breach of contract in failing to continue the employment of plaintiff as a teacher.

Count II is an action for a declaratory judgment, a temporary restraining order, a permanent injunction and for damages.

Appellant's claim for relief in Count II primarily seeks a determination of the validity of Paragraph 15 of the 1955 Salary Schedule and Paragraph 18 of the 1958 Salary Schedule. The two paragraphs are essentially the same in principle. The pertinent parts of both provide: "Each person on this salary schedule shall join the professional organizations which include the Community Teachers' Association, the National Education Association, the Missouri State Teachers' Association, and the St. Louis Suburban Teachers' Association. Failure to join such organizations precludes the benefits derived through the salary schedule and places such person outside the salary schedule."

Count II then alleges that the appellant, hereinafter referred to as Plaintiff, voluntarily and from his own free choice, paid dues to the National Education Association and the Missouri State Teachers' Association, but that he paid the dues to the other two professional organizations, the Community Teachers' Association and the St. Louis Suburban Teachers' Association, only because the Salary Schedule of 1955 and 1958 provided that a failure to join such four organizations precluded the benefits derived through the salary schedule and placed such person outside the salary schedule. The total sum paid by plaintiff as dues to the two organizations which he now claims were involuntarily and coercively made was $32. However, during each school year of his employment plaintiff did pay his membership dues to all four professional organizations. Plaintiff here contends that said provisions of the Salary Schedules are null and void, discriminate between teachers employed by the Board as to the amount of salary paid to each teacher based upon membership or lack of membership in the four named organizations, and that the Board had no legal authority to so provide. He asks in Count II for a declaratory judgment to determine and declare that Paragraphs 15 and 18 of the Salary Schedules of 1955 and 1958, respectively, are void and beyond the legal authority

of the Board, asks for a restraining order and permanent injunction against the Board of Education enjoining the Board from enforcing said sections, and that the Court render judgment for plaintiff in the sum of $32 which plaintiff paid as membership dues to the Community Teachers' Association and the St. Louis Suburban Teachers' Association.

The trial court sustained defendants' Motions to Dismiss both counts of plaintiff's petition on the ground that the petition failed to state a claim against the defendants upon which relief could be granted and entered a judgment dismissing the cause. From that judgment the plaintiff has appealed.

The Salary Schedules, the Teacher's Contract employing plaintiff for the school year 1958–1959, the written notice dated April 10, 1959, by the Board to the plaintiff that plaintiff was not being re-employed for the 1959–1960 school year, and the written notice of the Board to the plaintiff, dated May 13, 1959, wherein the Board reaffirmed its original decision not to re-employ him, are attached to and made part of the petition.

We will first consider if the pleaded facts of Count I state a claim against the defendants upon which relief could be granted. Did plaintiff state facts entitling him to re-instatement as a teacher or to damages upon the ground that he had acquired a continuing or permanent tenure as a teacher? We think not.

The relief that plaintiff seeks under Count I can be granted only if a school teacher employed by a Town School District could be granted permanent tenure as a teacher. The contract between a Town School District Board and a school teacher is for one year. Section 163.080 RSMo 1949, V.A.M.S. The statutory provisions for *re-employment* of teachers are set out in Section 163.090 RSMo 1949, V.A.M.S. Under this section the Board is required to notify each teacher in writing concerning his or her re-employment or lack thereof on or before the 15th day of April of the year in which the contract then in force expires. The failure of the Board to give such notice constitutes re-employment on the same terms as those provided in the contract of the current fiscal year. The Board is required to present to each such teacher not so notified a regular contract the same as if the teacher had been regularly re-employed. The Missouri Supreme Court has decided that Section 163.090, supra, extending a teacher's contract for another year if such teacher is not notified in writing before April 15th, does not change the legal effect of teacher's annual contracts for each school year, and does not establish any sort of tenure for teachers. Bergmann et al. v. Board of Education of Normandy Consolidated School Dist. et al., 360 Mo. 644, 230 S.W.2d 714. Section 163.-090 clearly contemplates the execution of a new, specific and distinct annual contract for each year. The point is made clear by the Springfield Court of Appeals in State ex rel. Joslin v. School Dist. No. 7 of Jasper County, Mo.App., 302 S.W.2d 497, loc. cit. 500 where it is stated:

"Section 165.320 plainly provides in unambiguous and unequivocal terms that no teacher shall be employed 'unless a majority of the whole board shall vote therefor' * * *; and, in so far as Sections 165.320 and 163.090 are in pari materia, it is our duty so to construe them as to harmonize and give effect to all provisions of both statutes * * *. No reason, either legal or otherwise, is suggested or apparent why the above quoted provision of Section 165.320 should be construed as applicable *only* to the *first* year of employment by a school district; but, on the contrary, considerations of reason, logic and public policy would seem to support our conclusion that the prohibition against employment of a teacher 'unless a majority of the whole board shall vote therefor' is applicable as to *each* year of employment or re-employment,

particularly in view of the fact that, as we have noted, Section 163.090 does not establish tenure for teachers but contemplates 'the execution of a new, specific and distinct annual contract' for each year."

The Supreme Court of Missouri in Dye v. School Dist. No. 32 of Pulaski County et al., 355 Mo. 231, 195 S.W.2d 874, 879 held that Section 10342a, Laws 1943, p. 890 (present Section 163.090) providing that a failure on the part of a School Board to give a teacher written notice on or before April 15th shall constitute a re-employment, did not change the legal effect of the teacher's contract, and stated, "The new law merely imposed a statutory duty on both parties to give notice of its (the contract's) continuance or not."

In Brooks et al. v. School Dist. of City of Moberly, 8 Cir., 267 F.2d 733, it was decided that a teacher, on the expiration of his contract, has neither contractual nor statutory rights to continued employment.

■ The statutory law of Missouri (except Section 165.590 RSMo 1949, V.A. M.S. and other sections pertaining to School Districts in cities of 500,000 or over (165.-563–165.653)), as construed in State ex rel. Wood v. Board of Education of City of St. Louis, 357 Mo. 147, 206 S.W.2d 566, 568, and in State ex rel. Brown et al. v. Board of Education of City of St. Louis, 294 Mo. 106, 242 S.W. 85; second appeal 299 Mo. 465, 253 S.W. 973 and Gartenbach v. Board of Education of City of St. Louis, 356 Mo. 890, 204 S.W.2d 273) does not provide for tenure contracts for school teachers, and certainly not for continuing and permanent tenure contracts as contended by plaintiff, Milton D. Magenheim. A teacher's contract in a Town School District (section 165.010) in Missouri is an annual contract. There is no statutory law or decisions of our courts providing or holding otherwise.

■ The teacher's contract entered into between the School Board of the Riverview Gardens School District and plaintiff Milton Magenheim provides:

"That the said Milton Magenheim agrees to teach the public school of said District for the term of 10 months, commencing on the 1st day of September, 1958, for the sum of $620.00 dollars per month, to be paid monthly. * * *

"This contract is subscribed to with a full understanding of Sections 163.-010, 163.080, 163.090," and other sections.

The contract, as required by Section 163.-080, was signed by the teacher and the President of the Board and attested by the clerk of the district, and specified the number of months the school was to be taught and the wages per month to be paid.

Paragraph 11 of the 1958 Salary Schedule For Teachers of the defendant School District was as follows:

"Teaching contracts are to be *for the length of the school year*. However, payment for these services will be made over a 12 months' period of time. Thus, the contracted salary of all certificated personnel will be divided into 12 equal payments and payments shall be made during each calendar month."

The plaintiff contends that by the inclusion of paragraph 5 in the 1958 Salary Schedule the provisions of paragraph 5 became a rule and regulation of the Board and gave him continuing employment, which could not be terminated so long as his performance as a teacher was satisfactory, and that his services could not be terminated unless he was first notified of his deficiencies and given reasonable time to improve. Paragraph 5 of the Salary Schedule is as follows:

"Teachers not considered satisfactory shall be notified in writing of their deficiencies and be given such reasonable time to improve as the Board of Education may determine. During this

time, placement on the schedule or increments provided in the schedule may be withheld and continuation of unsatisfactory work will result in dismissal."

■ The plaintiff has misconceived the action taken by the defendant Board of Education. The plaintiff was not *dismissed* or *discharged*. He simply was not offered a contract to teach for the following school year 1959–1960. As required by Section 163.090 the school board notified the plaintiff in writing before the 15th day of April, 1959 "concerning his * * * re-employment or lack thereof." Plaintiff was notified in writing by letter dated April 10, 1959: "This is official notice of the Board of Education of the School District of Riverview Gardens that you are not being re-employed for the 1959–1960 school year." The notification was signed by the President and Secretary of the Board.

It is unimportant whether paragraph 5 of the Salary Schedule be considered a part of the salary *policy* of the board, or whether it be considered a rule or regulation of the Board. Actually paragraph 10 of the Salary Schedule reads:

"This salary schedule represents the salary *policy* of the Board of Education, and they have the legal right to suspend, modify, or terminate it at any time. Voters approval of the required tax is necessary to carry out the schedule."

Paragraph 5 could only refer to a teacher's performance during his contract year. The dismissal referred to therein can only refer to the revocation of a teacher's certificate and not to a dismissal, for that is the only method the services of a teacher employed by a Town School District can be terminated during the contract year on the ground of unsatisfactory performance. Originally school boards could dismiss a teacher at any time for such reasons as they might deem sufficient. G.S. 1865 pg. 260 Section 12. However, in 1870 the

school laws were revised and the authority of school boards to dismiss teachers was dropped. Even then for a short time school boards insisted that they still had implied authority to dismiss teachers. But in 1883 the Supreme Court of Missouri in the case of Arnold v. School Dist., 78 Mo. 226, ruled that the legislature, in dropping from the statutes the former authority to dismiss school teachers, meant to take away from school boards all authority, express or implied, to dismiss teachers. In 1889 the General Assembly of Missouri provided by statute:

"The board shall have no power to dismiss a teacher; but should the teacher's certificate be revoked, said contract is thereby annulled * * *. Should the teacher fail or refuse to comply with the terms of the contract, or to execute the rules and regulations of the board, the board may refuse to pay said teacher—after due notice, in writing, is given by order of the board—until compliance therewith is rendered * * *." Laws of 1889 pg. 224.

That has been the law in this state since the decision of Arnold v. School Dist. in 1883 and since the statutory enactment in 1889, supra, Section 163.100 specifically provides: "The board shall have no power to dismiss a teacher." This prohibition to dismiss a teacher has been extended to a Superintendent of Schools of the very district named as a defendant in this cause. This court in Lemasters v. Willman, Mo. App., 281 S.W.2d 580, decided that a superintendent is a "teacher" within the meaning of the statutes, and that a Town School District Board of Education has no express or implied authority to dismiss a district Superintendent of Schools by any procedure for any cause.

■ Therefore, if we were to give Paragraph 5 of the Salary Schedule the efficacy claimed by the plaintiff, and interpret Paragraph 5 to mean that the school board could

dismiss a teacher after giving written notice of his deficiencies and failures, after a reasonable time, to improve, Paragraph 5 would contravene both the statutes and the decisions of the courts of this state. Paragraph 5 can only be valid if interpreted as providing a step in the procedure for withholding teacher's pay under Section 163.100 or in the institution of proceedings to revoke a teacher's certificate to teach as provided by Section 168.090. Revocation of a teacher's certificate is the only method to terminate or annul a teacher's performance during the term of his annual contract.

■ School Boards have authority to "make all needful rules and regulations for the organization * * * and government in their school district," (Section 163.010), and "The faithful execution of the rules and regulations furnished by the board shall be considered as part of said contract," with the penalty for failure or refusal of the teacher to comply with the contract or to execute the rules and regulations being the withholding of the teacher's pay— after due notice in writing is given by the Board. (Section 163.100).

■■ Paragraph 5 does not change the annual teacher's contract with the defendant Town School District to any kind of tenure contract. School Boards have the right to offer or refuse to offer a contract to any teacher for the following year, and if written notice to the teacher is given before April 15 of the year in which the contract then in force expires that such teacher will not be re-employed, the board need not assign or give any reasons. And likewise, a teacher who has been informed of re-election by written notice or tender of a contract shall, within fifteen days thereafter, present to the board a written acceptance or rejection of the employment tendered. Section 163.090. If the teacher does not accept the employment he need not give any reason for not returning to his employment. Paragraph 5 of the Salary Schedule does not take from the defendants their discretionary right to decide if any

teacher will be re-employed. Plaintiff Magenheim was not dismissed during his contract year. The only action taken by the defendants was their giving to the plaintiff written notice that he would not be re-employed the following 1959–1960 school year. This the defendants had the right to do. Plaintiff is not entitled to be restored to his teaching position, nor is he entitled to a teacher's salary in any succeeding year after the defendant school board notified him in writing that he was not being re-employed for the 1959–1960 school year. The trial court properly sustained defendants' Motion to Dismiss Count I.

As heretofore stated, the trial court also sustained defendants' Motion to Dismiss Count II. Briefly, in Count II, plaintiff prays a declaratory judgment to determine and declare that paragraphs 15 and 18 of the Salary Schedules of 1955 and 1958, respectively, are void and beyond the legal authority of the School Board to adopt, and for injunction against the Board of Education from enforcing the provisions of said paragraphs of the Salary Schedules and for judgment in the sum of $32 which sum the plaintiff paid, in the aggregate, as dues to the Community Teachers' Association and to the St. Louis Suburban Teachers' Association during his employment as a teacher from 1955–1956 through the school year 1958–1959.

Does Count II of the petition state facts calling for the application of the Declaratory Judgments Act? That is the question presented by the defendants' Motion to Dismiss Count II of Plaintiff's petition. The Uniform Declaratory Judgments Act was adopted in Missouri in 1935 (Mo.Laws of 1935, p. 218), and the provisions therefor are now Section 527.010 to Section 527.140 RSMo 1949 and Rules of Civil Procedure 87.01 to 87.11, V.A.M.R. Under such Act circuit courts have power to declare rights, status and other legal relations, and the declaration by the court may be either affirmative or negative in form and effect. (Section 527.010). Any person interested under a written contract, or whose rights,

status or other legal relations are affected by a written contract, statute or ordinance may have such instrument construed and obtain a declaration of his rights. (Section 527.020). A contract may be construed either before or after there has been a breach. (Section 527.030). Section 527.-010 through Section 527.050 set out specific instances where the declaratory judgment procedure is proper. Section 527.060 is the only one of limitation, for it provides, "The court may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." But as Judge Laurence M. Hyde in his article, Declaratory Judgments: Experience Under the Uniform Act, in 26 Washington University Law Quarterly 468, page 481, states:

> "Undoubtedly the purpose of this Section (now Section 527.060) is to give the court some discretion to determine, in border line cases, whether the situation has reached the stage where a declaratory judgment would really be final.

> "If it would not actually settle the controversy because future developments might reasonably be expected to raise more or different questions, the court could properly refuse a declaration. However, this discretion should not be too strictly or narrowly exercised. The Act itself declares that it is remedial; and that 'its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.' " (Section 527.120).

The Supreme Court in Transport Manufacturing & Equipment Co. v. Toberman, Mo., 301 S.W.2d 801, while deciding that the petition did not state a case under the declaratory judgment statute, found no fault with the rule stated and set out in

26 C.J.S. Declaratory Judgments § 136, p. 312:

> "The test of the sufficiency of a complaint for a declaratory judgment is not whether it shows that the plaintiff is entitled to a declaration in accordance with *his theory* and contention, but whether he is entitled to a declaration of rights at all. It follows that the complaint need *not* allege facts showing that plaintiff is entitled to a declaration *in his favor,* and a complaint which shows on its face that plaintiff is advancing an erroneous contention of law is not therefor insufficient." (Emphasis ours).

Judge Hyde in 26 Washington University Law Quarterly, pages 486–7 has this to say:

> "Whether a declaratory judgment action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made. In a case where grounds for declaratory judgment are shown, it is not proper practice merely to enter a judgment that the losing party takes nothing by his petition or counterclaim; or usually to sustain a demurrer and enter a judgment of dismissal. Section 1 of the Act (now Section 527.010) specifically provides that 'the declaration may be either affirmative or negative.' Therefore, no difficulty should be presented in preparation of a judgment either for or against the claims made in the petition. Of course, if no proper case for declaratory judgment is presented, as in Vincent Realty Co. v. Brown, (344 Mo. 438, 126 S.W. (2) 1162) a case of a petition seeking an advisory opinion concerning future prospective action, it is proper to enter judgment dismissing the petition."

To authorize a declaratory judgment the court must be presented with a

justiciable controversy appropriate for judicial determination. There must, of course, be a legally protectable interest at stake, and the question raised cannot be a mere moot question. Our Supreme Court has held that a question is moot when the question presented for decision seeks a judgment upon some matter in which the rendition of a judgment could have no practical effect upon any then existing controversy. State ex rel. Kramer v. Carroll, Mo.App., 309 S.W.2d 654, 657; and Preisler v. Doherty, 364 Mo. 596, 265 S.W.2d 404; nor is the Declaratory Judgment Act designed to adjudicate hypothetical or speculative situations.

An action for declaratory judgment is, however, the appropriate remedy to determine the powers of a school board, or to test the validity of its acts. It has been held that such action may be brought to determine matters relating to contracts of the school board, tenure of teachers, or the right of public school teachers to strike. 26 C.J.S. Declaratory Judgments § 93, pp. 216–217.

Plaintiff challenges the authority of the defendant Board of Education to adopt Paragraphs 15 and 18 of the 1955 and 1958 Salary Schedules, the provisions of which are essentially the same, the only difference being the date for teacher compliance with such provisions. The identical portions of the two Paragraphs read:

> "Each person on this salary schedule shall join the professional organizations which include the community Teachers' Association, the National Education Association, The Missouri State Teachers' Association, and the St. Louis Suburban Teachers' Association. Failure to join such organizations precludes the benefits derived through the salary schedule and places such person outside the salary schedule * * *."

Section 163.010 provides that, "The Board * * * shall have power to make all needful rules and regulations for the organization, grading and government in their school district." The Legislature of this state has delegated to school boards the power to exercise their judgment and discretion in matters affecting school management, including the employment of teachers, and a court may not interfere unless the board exercises such power in an unreasonable, arbitrary, capricious or unlawful manner.

The plaintiff's petition did not state facts which entitled him to a declaration as to whether or not, under said provisions, the board could require him to join the two professional organizations about which he complains for the following school year 1959–1960, because, as we have decided, he had, previous to filing his petition, received official notice from the defendant board that he would not be re-employed for that school year. Therefore, such question was moot and the plaintiff did not have a present, protectable interest at stake. He was not to be a teacher during the 1959–1960 school year. He could neither be affected nor prejudiced by the provisions of the Salary Schedules for the next school year.

However, in Count II of the petition, plaintiff asks the court to render judgment in his favor in the sum of $32, which he claims had been paid involuntarily and against his will as dues to the two Teachers' Associations. He asks the court to declare the provisions of the Salary Schedules and the rules and regulations of the School Board arbitrary, unlawful, void and beyond the legal authority of the board. As to this issue the petition does plead a justiciable controversy. It pleads an actual controversy existing as to the validity and reasonableness of Paragraphs 15 and 18 of the Salary Schedule. The petition presents a controversy among parties with adverse interests, calling for specific relief by way of a declaratory judgment, which will be conclusive and determinative of the issues involved. The controversy is actual, alive, and substantial. The petition alleges that

Paragraphs 15 and 18 were unreasonable and that plaintiff joined and paid dues to these two professional organizations only because required to do so through the threat of withholding and denying the benefit of the Salary Schedules. He asks the court to declare his rights under such written instruments.

■ Where the trial court fails to make declarations settling the rights of the parties the appellate court may do so. Smith v. Pettis County, 345 Mo. 839, 136 S.W.2d 282; Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932, 130 S.W.2d 945, 125 A.L.R. 1149; Hudson v. Jones, Mo.App., 278 S.W.2d 799; King et al. v. Priest et al., 357 Mo. 68, 206 S.W.2d 547. A declaratory judgment or decree may be directed by the appellate court after the trial court has dismissed the declaratory judgment petition without a declaration. This procedure was approved by the United States Supreme Court in Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441. See also Frazier v. City of Chattanooga, 156 Tenn. 346, 1 S.W.2d 786.

■ We conclude that the defendants had the legal right to adopt Paragraphs 15 and 18, which provided that teachers on the salary schedules shall join the four professional teachers' associations and that failure to join such organizations precluded such teacher so failing from receiving the benefits of the schedules and placed such teacher outside the salary schedule. The Legislature of this State has given Boards of Education the broad power "to make all needful rules and regulations for the organization, grading and government in their school district". (Section 163.010). In the teaching profession, as in all professions, membership in professional organizations tends to increase and improve the interest, knowledge, experience and overall professional competence. Membership in professional organizations is no guaranty of professional excellence, but active participation in such organizations, attendance at meetings where leaders give the members

the benefit of their experience and where mutual problems and experiences and practices are discussed, are reasonably related to the development of higher professional attainments and qualifications. Such membership affords an opportunity for self-improvement and self-development on the part of the individual member. It is the duty of every school board to obtain the services of the best qualified teachers, and it is not only within their power but it is their duty to adopt rules or regulations which seek to elevate the standards of teachers and the educational standards within their district. These are the basic principles expressed in Benton v. Windyville Consolidated School Dist. No. 32 of Dallas County, 228 Mo.App. 85, 68 S.W.2d 826. The plaintiff cites only one case going to this question, and that is a Montana case, Benson et al. v. School Dist. No. 1 of Silver Bow County et al., Mont., 344 P.2d 117, 119. There the plaintiffs were non-union school teachers. They challenged the power of the Board of Trustees of the School District to compel the plaintiffs to join the Teachers' Union affiliated with the AFL–CIO. The plaintiff teachers declined to sign a contract which contained a union security clause. The Union Security Clause provided:

"Any teacher who fails to sign a contract which includes the provisions of this Union Security Clause and who fails to comply with the provisions of this Union Security Clause shall be discharged on the written request of the Union, except that any such teacher who now has tenure under the laws of the State of Montana shall not be discharged but shall receive none of the benefits nor salary increases negotiated by the Union and shall be employed, without contract, from year to year on the same terms and conditions as such teacher was employed at during the year 1955–1956."

The Montana Supreme Court very properly held that the school board had no authority under the statutes of that state

to favor union teachers as against non-union teachers with respect to compensation or tenure. The court stated that had the Legislature placed such authority in the school board, there was respectable authority holding that such action by the Legislature would be unconstitutional. That case does not aid the plaintiff. Union membership per se has no connection with teaching competence. Plaintiff Magenheim was not *required* to meet the conditions stated in Paragraphs 15 and 18 of the Salary Schedules. Teachers employed by the defendant District who do not choose to meet the conditions stated for compensation under the Salary Schedules will have an individually negotiated compensation.

▆▆▆ In view of the broad authority granted to School Boards to manage school affairs and "to make all needful rules and regulations for the organization \* \* \* and government in their school district", the provisions of the Salary Schedules must be regarded as prima facie reasonable. The burden rested upon the plaintiff to plead facts to show the unreasonableness and invalidity of such provisions. We believe that the provisions of the Salary Schedules are reasonable and refuse to interfere with the judgment and discretion of the defendant Board of Education in adopting Paragraphs 15 and 18 of the Salary Schedules.

▆▆▆ The plaintiff is not entitled to recover the sum of $32, the dues paid to Community Teachers' and St. Louis Suburban Teachers' Associations. This was the total sum paid by plaintiff for membership in these two professional organizations during the school years beginning in September, 1955 and ending June, 1959. Actually, he was a member of all four of the Teachers' Associations during the entire time that he was employed by the defendant board. He accepted the salary in accordance with the schedules during the periods of his contracts. He is estopped from now recovering the payments made for membership in two of the Teachers' Associa-

tions. He was paid his teacher's salary under the Salary Schedules which required such membership. He may not now adopt an inconsistent position to the prejudice of the defendant School District. The estoppel here is more accurately termed a quasi estoppel, frequently mentioned in the authorities. 19 Am.Jur. Sec. 64, p. 684; 31 C.J.S. Estoppel § 107 p. 341; Rhodus v. Geatley, 347 Mo. 397, 147 S.W.2d 631; Owen v. City of Branson, Mo.App., 305 S.W.2d 492; St. Louis Public Service Co. v. City of St. Louis, Mo.Sup., 302 S.W.2d 875. This rule or doctrine is sometimes classified as one of ratification or election or estoppel by acceptance of benefits. 31 C.J.S. Estoppel § 109 p. 347 states:

"Where one having the right to accept or reject a transaction takes and retains benefits thereunder, he ratifies the transaction, is bound by it, and cannot avoid its obligation or effect by taking a position inconsistent therewith. A party cannot claim benefits under a transaction or instrument and at the same time repudiate its obligations. Courts of equity proceed on the theory that there is an implied condition that he who accepts a benefit under an instrument shall adopt the whole, conforming to all its provisions and renouncing every right inconsistent with it."

The Supreme Court in St. Louis Public Service Co. v. City of St. Louis, Mo.Sup., 302 S.W.2d 875, loc. cit. 879 said:

"The rule is well settled that one voluntarily proceeding under a statute or ordinance, and claiming benefits thereby conferred, will not be heard to question its validity in order to avoid its burdens. The same or similar rules have been applied in litigation involving many different types of instruments, licenses, or other transactions. The designation used in referring to this rule or doctrine is obviously unimportant. It is frequently called an es-

toppel. However, it is akin to the rule against assuming inconsistent positions and it involves the principles of waiver, election, and ratification rather, perhaps, than being limited to the precise principles of equitable estoppel. Regardless of the name or principle designated, the result is clearly the same. It precludes one who accepts the benefits from questioning the validity of the accompanying obligation. For convenience, we will hereinafter refer to this rule or doctrine as an estoppel."

 The equitable principle undergirding this rule is stated succinctly in City of St. Louis v. Davidson, 102 Mo. 149, 153–154, 14 S.W. 825, 826:

"The principal in that contract has derived benefits under it. He cannot retain those benefits and repudiate the source from which they spring by denying the validity of the contract in which they originated. In short, he is estopped to grasp the benefits of that contract with one eager hand, while thrusting aside its burdens with the other."

When the plaintiff accepted his salary payments under the provisions of the Salary Schedule, provided he kept himself abreast of trends in his profession by joining the named Teachers' Associations, he accepted the obligation of maintaining his memberships.

We need not decide the question raised by plaintiff as to his being permitted to amend his petition upon remand and if this court held that the petition defectively stated his claim. A ruling on this point is made unnecessary in view of our opinion concerning Count II and our declaration of the rights of the parties as prayed for in the request of plaintiff for a declaratory judgment.

The order of the trial court in sustaining defendants' Motion to Dismiss Count I of plaintiff's petition is affirmed. The order sustaining the Motion to Dismiss Count II, asking a declaratory judgment, is reversed. The petition stated facts which entitled plaintiff to have the circuit court declare his rights under the Salary Schedules. The rights of the parties are declared as stated herein.

ANDERSON, P. J., and RUDDY, J., concur.

WOLFE, J., not participating.