233 S.W.2d 768 (1950)
COMMON SCHOOL DIST. NO. 27, OF GASCONADE COUNTY et al.
v.
BRINKMANN.
No. 27964.
St. Louis Court of Appeals, Missouri.
November 2, 1950.
*769 Joseph T. Tate, Owensville, for appellant.
J. H. Mosby, John P. Peters, Linn, for respondents.
McCULLEN, Judge.
This action was brought by respondents, who will be referred to as plaintiffs, against appellant, hereinafter called defendant, in the Circuit Court of Gasconade County, Missouri, on September 7, 1949, for an injunction to restrain defendant from acting as school teacher in Common School District No. 27, also referred to as Bay School District, in Gasconade County. Plaintiffs Pohlmann, Koelling, and Marsh were members of the Board of Directors of said School District. The Judge of the Circuit Court issued a temporary restraining order on the same day that the petition of plaintiffs was filed, upon plaintiffs filing a $2000.00 bond conditioned as required by law.
On September 28, 1949, defendant filed an answer to plaintiffs' petition concluding with a prayer that the temporary restraining order be dissolved and that plaintiffs' petition be dismissed. On October 15, 1949, plaintiffs filed a reply after which, on November 8, 1949, the cause was tried before the court resulting in the entering of a decree and judgment on said date perpetually enjoining and restraining defendant from teaching or attempting to teach or instruct the pupils of the school in said district or interfering with the Board of Directors or with Norris Rohlfing, another teacher, in the operation of said school or interfering in any manner with the operation and processes of said school under the direction of the Board of Directors and the teacher thereof. After an unavailing motion for a new trial defendant on February 8, 1950, filed his notice of appeal and duly took all necessary steps to transfer the cause to this court.
The pleadings of the parties are lengthy and since no question is raised thereon by any of the parties, it would serve no useful purpose for us to set them forth here. It is sufficient to say that the evidence adduced by the parties tended to support the allegations in the petition and the answer respectively. We shall, therefore, review the evidence.
It appears from the evidence without dispute that defendant was employed as a teacher of Common School District No. 27 in Gasconade County for three years prior to the school year beginning in September 1949. He was a duly qualified teacher under the laws of Missouri and in each of said years he had a written contract with the District to teach said school and during the period mentioned performed all his duties as such teacher. School District No. 27 was defendant's own home district. Defendant's contract as such teacher for the third year mentioned was marked Exhibit A and was set forth as a part of defendant's answer and motion to dismiss. It was also introduced in evidence.
It is not disputed that when the time came for the Board of Directors to renew or refuse to renew its contract with defendant for his services as a teacher for the next succeeding year, the Board did not proceed in accordance with Section 10342A, Laws Mo.1943, page 890, Mo.R.S.A. § 10342a, covering such matters. Said section, insofar as it is pertinent to our inquiry, provides: "It shall be the duty of each and every board having one or more teachers under contract to notify each and every such teacher in writing concerning his or her re-employment or lack thereof on or before the fifteenth day of April of the year in which the contract then in force expires. Failure on the part of a board to give such notice shall constitute re-employment on the same terms as those provided in the contract of the current fiscal year; and not later than the first day of May of the same year the board shall present to each such teacher not so *770 notified a regular contract the same as if the teacher had been regularly re-employed. Any teacher who shall have been informed of re-election by written notice or tender of a contract shall within fifteen days thereafter present to the employing board a written acceptance or rejection of the employment tendered; and failure of a teacher to present such acceptance within such time shall constitute a rejection of the board's offer."
It further appears from the evidence without dispute that on May 2, 1949, defendant notified the Board of Directors of the School District of his acceptance of re-employment by a notice in writing as follows:
"You are hereby advised that I accept re-employment as teacher of School District No. 27 of Gasconade County, Missouri, for the school year beginning September 6, 1949, under the same terms and conditions as provided for in my contract that I had for the school year of 1948 and '49.
"I further advise that I will be present at the opening of said school on September 6th, ready to resume my duties as teacher of that school.
"I also advise that if there is anything that you wish to discuss with me prior to the opening of school, I will be glad to meet with you.
 "Yours truly,
 "Morris Brinkmann."
The evidence shows that prior to the opening of the school on September 6th, 1949, defendant filed his certificate of qualification with Gerhardt Engelbrecht who had been designated by the Board as Clerk of the School District. Defendant also obtained from Engelbrecht the enrollment records that had been kept by defendant during the prior school year and a key to the schoolhouse. On the opening day of school, September 6, 1949, defendant went to the schoolhouse early in the morning and at the regular opening time proceeded to perform his duties as teacher of the school by ringing the bell, assigning lessons to the pupils, and hearing class recitations. While defendant was performing said duties as teacher, Directors Pohlmann, Koelling, and Marsh appeared in the school room and the two last named tried to persuade and urged the school children not to go up to the front of the room to receive their books from defendant as teacher and also urged the children not to take part in class recitations under the direction of defendant. They told the children that defendant was not their teacher; that Rohlfing was their teacher.
The evidence further shows that on said morning at the opening of the school defendant was informed by Pohlmann and the other members of the Board of Directors that he was not the teacher for the term of 1949-50, and he was requested to turn over the duties of teacher to Norris Rohlfing with whom the Board had made a written contract dated April 27, 1949, to teach the school. The Directors had seen to it that Rohlfing was present on the morning in question to begin his duties as teacher. Defendant declined to heed the request of the Board of Directors to turn over the duties as teacher to Rohlfing and continued to perform the duties of teacher until noon that day, it being the custom of the School District at that time to close the school at noon on the first day.
The evidence also shows that during the afternoon of that first day the members of the Board of Directors notified the parents of the pupils not to send their children back to school the next day. Defendant went to the schoolhouse and sat in the school room each day after the opening day ready to perform the duties of teacher until September 9, 1949, on which day he was served with a restraining order issued by the Circuit Court of Gasconade County requiring him to refrain from teaching or attempting to teach the school until further order of the court. It is not disputed that defendant made no further effort to teach the school after the court's order was served on him.
Testimony was introduced on the part of the Board of Directors as plaintiffs to the effect that defendant had made statements that he would not accept the position *771 as teacher of the school for the next succeeding year on the same terms provided for in his contract for the 1948-49 school year; that defendant stated to the President of the Board, Mr. Pohlmann, that he wanted an increase in salary from $160.00 which he had been paid, to $200.00 per month for the following year; that after April 27, 1949, defendant knew that the Board had entered into a formal written contract with Norris Rohlfing as teacher for the 1949-50 school year.
Testimony was introduced by plaintiffs to the effect that defendant on April 28, 1949, requested Rohlfing not to withdraw as teacher but to go ahead and teach the school; that defendant had told Rohlfing all he (defendant) wanted was a settlement with the Board of Directors, and that he did not wish to teach the school. Testimony given by Norris Rohlfing, the new teacher, on cross examination was to the effect that on an occasion prior to September 6, 1949, Director Marsh had told Rohlfing that they had two teachers and that he (Mr. Rohlfing) should be present on the first day of school.
Paul Patterson, a school teacher with thirty years experience as such, testified on behalf of defendant that some time during April 1949, Mr. Koelling, Mr. Marsh and Mr. Pohlmann, members of the Board of Directors, came to his home and tried to employ him as a teacher to teach the school; that he did not give them a definite answer at that time but later went to see defendant to learn whether defendant was "actually out of wanting the school" or whether he was "contending for" the job; that when he learned from defendant that defendant was interested and would like to have the school, that "that stopped our conversation," the witness saying that he told defendant "I am out." Mr. Patterson further testified that later in the summer of 1949, he had a conversation with Mr. Koelling, one of the Directors of the School, and that Koelling referring to the School said to the witness: "Well, we are in a mess down there at Bay" and that Koelling further said: "Well, we have two teachers down there, and we didn't know that it was the law that you had to notify them, or give them a written notice give him a written notice by the 15th of April that he was not re-employed"; that Mr. Koelling further said to the witness "We are thinking of fixing up the old building, and having two teachers, one in one building, and one in the other"; that Mr. Koelling further said to the witness on that occasion, "Let the children that like Morris go to his school, and the rest of them go to the other teacher."
Edwin Klein, President of Lost Hill School District located nearby the Bay School District, testified as a witness for defendant that sometime during the spring of 1949, Mr. Pohlmann, President of the Bay School District, came to the home of the witness to attempt to make an arrangement to have the children of the Bay School District transported to Lost Hill District; that Mr. Pohlmann said they were having trouble in their school; that they had two teachers and they wanted to get defendant out and get out of defendant's contract with the District.
Mr. Pohlmann, President of the Board of Directors of the plaintiff-School District, in his testimony for plaintiffs admitted that the above mentioned visit and conversation described by Mr. Klein took place as Mr. Klein testified. Mr. Pohlmann frankly admitted on cross examination that what he and the other Directors of the Bay School District were trying to do was to find another teacher to take defendant's place, and they did not know whether they could find one; that they did not want to turn defendant loose until they could find another teacher. In this connection Mr. Pohlmann's testimony on cross examination was very frank and straightforward but it was also very revealing as to the reasons for the failure of the Board of Directors to give defendant written notice of the Board's intention to re-employ or refuse to re-employ defendant. He testified as follows:
"Q. Mr. Pohlmann, you directors there for quite a while did not know whether you could find another teacher, or not? A. That is right.
*772 "Q. And you ran around over the county at different places trying to get somebody to teach? A. Yes sir.
"Q. And that was the reason you did not notify this fellow, wasn't itisn't that true, Mr. Pohlmann? A. Well, we really didn't know.

* * * * * *
"By the Witness: A. I had in mind that the law was 15 days after the school meetings that he should have a notice, but I still did not know it was written notice, it just slipped.
"Q. But really what you boys were trying to do was to find another teacher, and you didn't know whether you could find another one, that is true, isn't it? A. That is true.
"Q. And you did not want to turn him loose until you could find another one, isn't that true? A. Yes sir; wethat happened the same way the year before."
George Koelling, a member of the plaintiff Board of Directors, testified for plaintiffs describing the scene at the school house on September 6, 1949, when the school was opened by defendant. The witness stated that defendant took over control of the school and that he "acted pretty wild"; that the Board members told defendant he was not the teacher and that Rohlfing was the teacher. The witness stated that early in 1949, he had a conversation with defendant in regard to teaching the school for the year 1949-50 and that defendant said he would like to have the school but he could not teach for the old price; that he would have to have the budget price which was $200.00. It appears that the old price referred to was $160.00 per month.
Walter Marsh, another member of the Board of Directors, like Mr. Pohlmann, also was very frank in his admissions concerning the Board's failure to notify defendant in writing of the intention not to re-employ defendant for the following year. Marsh testified:
"Q. You did not notify him according to law, did you? A. I didn't know what the law was at that time.

* * * * * *
"Q. And you do admit that you did not comply with the law, don't you? A. Yes sir."
Mr. Marsh further testified in this connection:
"By Mr. Mosby: Q. You were depending upon Mr. Brinkmann, the defendant's father? A. Well, I didn't know anything about the law, I was ignorant of the law. I knew that the teacher had to be notified, and at the meeting I brought up this question."
In relation to his duties as a member of the Board of Directors, Mr. Marsh, who was elected a member of the Board in April 1949, testified that he did not possess a copy of the law book setting forth the duties of members of the Board of Directors; that he did not inquire to see whether he could get such a book, and toward the conclusion of his cross examination testified: "Q. In other words, you did not make any inquiry at the courthouse or of any county superintendent of schools to find out what your duties were? A. No sir."
There was much testimony by other witnesses for both parties concerning many of the details of the dispute between the Board of Directors and defendant including what took place on the morning of September 6, 1949, but we believe it is unnecessary to set forth such testimony here in view of the admissions made by plaintiffs at the trial that they did not comply with the statute requiring them to notify defendant in writing of their intention to refuse to re-employ him for another year as teacher. These admissions made by plaintiffs raise a question of law and make it unnecessary to base the decision in this case on the credibility of witnesses.
It is clear from their own testimony that the members of the Board of Directors did not inform themselves with respect to their duty under the law in dealing with defendant on the question of the renewal or refusal to renew defendant's contract as teacher. The fact that defendant was heard to say on a few occasions that he did not wish to continue as teacher, even if *773 we accept such testimony as true, did not relieve the Board of Directors of its clear and positive duty under the statute to notify defendant in writing, on or before the 15th of April of the year in which the contract then in force was to expire, of their intention not to re-employ him for the subsequent year. The statute plainly and unequivocally provides that: "Failure on the part of a board to give such notice shall constitute re-employment on the same terms as those provided in the contract of the current fiscal year". Sec. 10342A, Laws Mo.1943, page 890, Mo.R.S.A. § 10342a.
Furthermore, it must not be overlooked that although defendant received no notice in writing from the Board of Directors concerning the renewal or refusal to renew his contract, he nevertheless, gave notice in writing to the Board dated May 2, 1949, which the Board admitted that it received, stating that he accepted re-employment as teacher under the same terms and conditions as provided for in his contract for the school year of 1948-49, and that he would be present at the opening of the school on September 6 to resume his duties as teacher. Under these undisputed facts and admissions, it is obvious that whatever authority the Board of Directors may have had to employ an additional teacher, and we are not passing on that matter, they certainly had no lawful authority to treat defendant's contract with them as abrogated. The efforts of the members of the Board of Directors to extricate themselves from what some of their own number referred to as the "mess" they were in is understandable but such "mess" was solely the result of their own failure to proceed in accordance with the statute hereinbefore referred to.
A consideration of all the evidence shows that defendant in proceeding to open and teach school on the morning of September 6, 1949, was acting clearly within his rights as a teacher under contract with the School District and was not a wrongdoer in any sense of the word. On the contrary, plaintiffs, having been admittedly laboring under an erroneous impression as to their rights and duties and having failed to comply with the law which clearly prescribed their duties, were not entitled to an injunction to restrain defendant from performing the duties of teacher.
The fact that defendant went to the school on September 6, 1949, opened the school at the proper time and performed the duties of teacher, even though the Board of Directors had employed another teacher, did not constitute defendant a wrongdoer. In the absence of any proper notice from the Board of Directors to him of the termination of his employment, defendant was under the obligation of a valid contract to perform the duties of teacher. It was necessary for defendant to tender performance of his part of the contract in accordance with its terms in order to preserve his rights thereunder. If defendant had failed to tender performance of the contract at that time and place the Board of Directors might well have been justified in treating the contract as having been abandoned by him. The scene of confusion described by plaintiffs and their witnesses appears to have been nothing more than the natural consequences of the actions of the Board of Directors in improperly trying to prevent defendant from performing his duties as teacher which he was under the obligation of a valid contract required to perform. It will be recalled that the Board of Directors had the newly employed teacher Rohlfing present at the opening of school and they urged the children to pay no attention to defendant because the Directors erroneously assumed that their employment of Rohlfing abrogated their contract with defendant even though they had taken no lawful steps to terminate defendant's contract as teacher.
The question of whether or not a board of directors of a school district can lawfully cancel or abrogate an existing valid contract for the employment of a teacher by making a new arrangement or contract with another teacher has been decided by our Supreme Court in Dye v. School District No. 32 of Pulaski County et al., 355 Mo. 231, 195 S.W.2d 874, 881. The Dye case, supra, was an action brought by a teacher against a school district on a teacher's contract. There was a judgment for the defendant-school district in the court *774 below and the teacher-plaintiff appealed. The situation in the Dye case was similar to that in the case at bar. In the Dye case the School Board had failed to give Dye notice of his re-employment and made an arrangement to transport the children to Waynesville by bus where they were taught by another teacher newly employed by the defendant Board. The Supreme Court said: "The Waynesville arrangement was not made until the middle of August, and it was illegal anyway so far as appellant was concerned, because the concluding part of Sec. 10342a (the same statute involved in the case at bar) provides that if the school board desire to do that they must give the teacher written notice of the termination of his contract not later than July 1, which they failed to do. A school board cannot breach a valid contract merely by making some new arrangement, no matter how legal it may otherwise be. Boswell v. Consolidated School Dist. No. 8 of Newton County, Mo.App., 10 S.W.2d 665, 668(10). If they lock the school house door and prevent the teacher from performing his contract he can quit and sue. Wood v. Consolidated School Dist. No. 13, Mo.App., 7 S.W.2d 1018, 1021(5)." Dye v. School District No. 32 of Pulaski County et al., 355 Mo. 231, 195 S.W.2d 874, 881. (Words in parenthesis ours.)
Plaintiffs in their brief in this court argue that defendant, having renounced his contract before the time of performance, placed plaintiffs in a position where they had a right to treat the contract as broken and that they could act at the time of the breach or wait until time of performance and then act; that the statements made by defendant that he would not teach school during the 1949-50 school year without an increase in salary constituted an "anticipatory breach" which, in reality, was a total breach of the contract; that if plaintiffs accepted and treated defendant's abandonment of the contract as a breach thereof and thereafter entered into a contract with another teacher, defendant could not then withdraw his renunciation and offer to perform because of the change in conditions.
The above contentions of plaintiffs completely ignore the admitted fact that, contrary to the statements supposed to have been made by defendant that he would not take the job of teacher again without an increase of salary, defendant actually notified the Board in writing that he accepted re-employment for the ensuing year under the same terms and conditions as provided for in his then existing contract. Furthermore, plaintiffs' contentions cannot be sustained because the outstanding fundamental controlling fact remains that plaintiffs admitted that they wholly failed to comply with the positive terms of the statute which required them to give written notice to defendant on or before the 15th of April, 1949, of their intention not to re-employ him. This failure on their part, ipso facto, constituted re-employment of defendant on the same terms as those provided in the contract for the then current fiscal year by the force of the statute, supra.
The statute, supra, by its very language clearly shows the intention of the Legislature to prevent boards of directors of schools from playing fast and loose with teachers with respect to their contracts of employment. It was also clearly intended to prevent teachers from playing fast and loose with school boards on the same matter. The language of the statute is simple, plain, and positive. The duties of all parties involved in such a relationship are clearly defined. The only thing necessary to have peaceful relations is for each and every party to comply with the law. Plaintiffs admittedly failed to comply with the law and as a result got into difficulties in their relations with defendant. A very important ancient maxim and principle of equity which our courts of today apply and enforce with the same watchfulness and vigor that courts of equity have always employed is: "He who comes into equity seeking relief must come with clean hands." As applied to the case at bar it means that plaintiffs having admittedly failed to comply with the law in the very matter concerning which they complained against defendant are not entitled to the equitable relief of an injunction. Whatever might *775 be said in favor of the court's action in granting the temporary restraining order on the petition which plaintiffs filed, we must nevertheless hold that when the evidence was all in after a hearing showing a situation entirely different from that presented in plaintiff's ex parte petition, the court should have sustained defendant's motion to dismiss plaintiffs' petition. We fully appreciate the duty that rests upon us in a proceeding in equity to give due deference to the conclusion reached by the trial judge but, being convinced that the trial court was in error, it is also our duty to render such judgment as we believe the whole evidence warrants. Shelton v. Franklin, 224 Mo. 342, 368, 123 S.W. 1084.
The judgment of the trial court is reversed and the cause remanded with directions to said court to enter judgment in favor of defendant setting aside and vacating both the temporary and permanent injunctions and dismissing the petition of plaintiffs at the costs of plaintiffs.
ANDERSON, P. J., and HOUSER, J., concur.