DAVID DEVLIN *v.* ELAINE BENNETT ET AL.

SUPERIOR COURT     NEW HAVEN COUNTY     FILE No. 105662
AT NEW HAVEN

Memorandum filed July 15, 1965

*Burton M. Weinstein,* of Bridgeport, for the plaintiff.

*Joseph F. Noonan,* of Meriden, for the defendants.

*William W. Sprague,* of Hartford, as amicus curiae.

PALMER, J. The plaintiff was formerly a teacher in the school system of the city of Meriden, where he taught in the school years 1961-1962, 1962-1963, 1963-1964, but his contract was not renewed for the school year 1964-1965. The defendants are the five members of the board of education of the city of Meriden, the superintendent of schools, and the assistant superintendent of schools.

The plaintiff seeks a declaratory judgment determining whether and to what extent the form of hearing provided for in § 10-151 of the General Statutes (known as the Teacher Tenure Act) must accord with minimum standards of due process of law. In his brief he states that the request for a declaratory judgment "is appropriate only if the Court should remand the matter to the Board for a proper hearing." He further seeks an injunction restraining the defendants "from doing any act pursuant to the notice of termination given" him, and an "order that the defendants forthwith renew the contract of the plaintiff to teach art for the school year 1964-1965." He originally claimed $10,000 damages "to reimburse him for the loss he suffered on account of the improper act of the defendants." However, the claim for money damages against the defendants has been formally abandoned by the plaintiff because as a result of the trial he is "satisfied that the defendants were not acting in such a completely irresponsible way as to deprive them of the protection of sovereign immunity."

Prior to the institution of this action, the plaintiff attempted to appeal to the Court of Common Pleas from the decision of the board of education not to renew his contract on the grounds that the action of the board was "illegal, arbitrary, discriminatory, and in abuse of the discretion vested in it." He also alleged that the action of the board "was in derogation of [his] rights" under the constitution of the United States, and "in violation of his rights" under the Connecticut constitution. The Court of Common Pleas ruled that there is no statutory authority for an appeal from the action of the board of education and that it was without jurisdiction to hear the case. *Devlin* v. *Board of Education,* Court of Common Pleas, New Haven County, No. 70683. The plaintiff did not appeal from this decision.

It has been represented to the court by the plaintiff that the "decision in this case will be of the utmost importance not only to every teacher employed in the public school systems of this State but to the Boards of Education and organizations representing teachers . . . as well." Prior to trial, William W. Sprague, counsel for the Connecticut Association of Boards of Education, Inc., which is composed of members of boards of education throughout Connecticut, filed a motion for permission to appear and file a brief as amicus curiae, in which he represented that "the issues involving statutory board of education dismissal procedures and constitutional rights of teachers [involved in this case] are matters of public interest," and that "the determination by this Court of the issues here raised is of vital importance to said Association and its members and to the people of the State of Connecticut as a whole." The court, *FitzGerald, J.*, ordered that Sprague be permitted to appear and file a brief as amicus curiae to assist the court after the introduction and completion of evidence, and he has done so.

At an earlier stage of this case, the defendants moved to erase this cause from the docket on the ground that the law does not provide for a judicial review of the matters here in question. The court, *Loiselle, J.*, denied this motion, and that ruling remains the law of this case. The defendants have not thereafter renewed or pressed their claim that the plaintiff is not entitled to a judicial review of the action of the board of education in not renewing the plaintiff's contract.

Many principles of law relative to the powers of boards of education in Connecticut are well established. " 'A town board of education is an agency of the state in charge of education in the town, and

broad powers are granted it by the legislature to that end.'" *Board of Education* v. *Ellington,* 151 Conn. 1, 6. "It is axiomatic that schools can be no better than the teachers employed in them. A board has the right to demand that a teacher know his subject and that he be capable of arousing and holding the interest of his pupils and maintaining discipline." *Conley* v. *Board of Education,* 143 Conn. 488, 497. A board of education has the power to exercise a sound and reasonable discretion in carrying out its duties. *Board of Education* v. *Ellington,* supra, 10.

The determination of the issues raised in this case depends upon the meaning of a portion of § 10-151 of the General Statutes. It is well to note at the outset of consideration of this statute that the case does not involve termination of a teacher's contract. The plaintiff's contract was not terminated for any of the reasons enumerated in subdivisions (1) to (6), inclusive, of subsection (b) of the statute. His complaint is that his contract was not renewed, and his claim is that the board of education acted illegally and improperly in refusing to renew it. This issue does not appear to have been the subject of previous judicial consideration or decision in this state.

The statute (subsection [a] of § 10-151), in so far as it relates to the matter of nonrenewal of a teacher's contract, provides as follows: "The contract of employment of a teacher shall be in writing and may be terminated at any time for any of the reasons enumerated in subdivisions (1) to (6), inclusive, of subsection (b) of this section, but otherwise it shall be renewed for a second, third or fourth year *unless* such teacher has been notified in writing prior to March first in one school year that such contract will not be renewed for the following year,

*provided,* upon the teacher's written request, such notice shall be supplemented within five days after receipt of such request by a statement of the reason or reasons for such failure to renew. Such teacher *may,* upon written request filed with the board of education within ten days after the receipt of such notice, be entitled to a hearing before the board to be held within fifteen days of such request. The teacher shall have the right to appear with counsel of his choice at such hearing." (Italics supplied.)

In substance, the statute provides that during the first three school years of a teacher's employment, a board of education may give him notice on or before March first of the first or second or third school year that his contract will not be renewed for the following year. If a teacher's contract is renewed for a fourth year of continuous employment, subsection (b) of § 10-151 provides that his contract of employment shall be renewed thereafter from year to year, except that it may be terminated for cause specified in the statute. A teacher renewed for a fourth year of continuous employment is said to have tenure because his contract must be renewed.

In the case of a teacher with tenure, subsection (b) of § 10-151 provides that prior to terminating a contract a board of education shall give the teacher concerned written notice that termination of his contract is under consideration. Upon written request filed by the teacher within five days after receipt of such notice, the board of education shall within the next succeeding five days give the teacher a written statement of its reasons therefor. Within twenty days after receipt of written notice that contract termination is under consideration, the teacher may file with the board a written request for a hearing, which the board shall hold within fifteen days

after receipt of the request. Such hearing shall be public if the teacher so requests or the board so designates. The teacher shall have the right to appear with counsel of his choice at such hearing. The board shall give the teacher its written decision within fifteen days after such hearing, together with a copy of the transcript of the proceedings, which shall be furnished without cost.

Subsection (b) of § 10-151 does not apply to a nontenure, probationary teacher such as this plaintiff, and the fact that the legislature has differentiated sharply between the procedure established for teachers who have attained tenure and that established for nontenure, probationary teachers must be accorded great weight in the construction of the statute. The Supreme Court of Errors has noted the favored position of teachers with tenure in the following language: "The school laws enacted by the General Assembly demonstrate the adoption of a public policy to provide good public schools, staffed by qualified teachers; [and] that these teachers, *having proved their worth, shall be secure in their employment . . . .*" (Italics supplied.) *Herzig* v. *Board of Education,* 152 Conn. 144, 151.

At the time of argument on the motion to erase, the defendants took the position in their brief that § 10-151 (a) "vests an absolute discretion in the Board of Education to exercise this power [not to renew a teacher's contract] as it sees fit." The defendants argued that "[t]he requirement[s] for the statement of reasons and [a] hearing can only be construed as statutory courtesy." The court cannot agree. The General Assembly does not sit to legislate courtesies. "It is an elementary principle of statutory construction that '[n]o word in a statute should be treated as superfluous, void or insignificant unless there are impelling reasons . . . why

the principle cannot be followed.' *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126 . . . ." *Archibald* v. *Sullivan,* 152 Conn. 663, 668.

"One of . . . [the] canons [of statutory construction] is that, if reasonably possible, a legislative enactment should be so construed that no clause, sentence or word is superfluous, void or insignificant." *Great Atlantic & Pacific Tea Co.* v. *Scheuy,* 148 Conn. 721, 723. "[I]t is a cardinal rule of statutory construction that significance and effect should, if possible, without destroying the sense or effect of the law, be accorded every part of . . . [a legislative] act, including every section, paragraph, sentence, clause, phrase, and word." 50 Am. Jur. 362, Statutes, § 358. "Courts must presume that the legislature had a purpose for every sentence, clause or phrase in a legislative enactment. . . . Statutes must be construed if possible so that their purpose is not thwarted by the construction." *McAdams* v. *Barbieri,* 143 Conn. 405, 419.

It is not to be assumed that the General Assembly, in providing that a probationary teacher may require a board of education to furnish him with a statement of the reason or reasons for failing to renew his contract, and in further providing that he shall be entitled to a hearing, if he so requests, with the right to appear with counsel of his choice at such hearing, intended to incorporate into § 10-151 (a) "words that are insignificant and meaningless." *Village Creek Homeowners Assn.* v. *Public Utilities Commission,* 148 Conn. 336, 339. These provisions must have been intended to have meaning and significance in the context in which they are used, and, accordingly, they must be recognized and given effect by the court.

It is clear that the legislature did not intend to clothe a teacher who has not attained tenure, and

the security secured thereby, with the same protections bestowed upon teachers who have proved their worth during their probationary period and have attained tenure. It is equally clear that the legislature did intend to grant nontenure teachers a measure of protection against arbitrary or capricious action by boards of education in respect to the renewal of teaching contracts, without impairing the right of boards of education to make honest and reasonable judgments in respect to the professional competence of probationary teachers. Boards of education once possessed an absolute discretion in regard to the renewal of contracts of nontenure, probationary teachers. The statutory requirements of a statement of reasons for nonrenewal and a hearing make it necessary and essential, in order to fulfil the intent and purpose of the statute, that a board of education must exercise a sound and reasonable discretion in making decisions to renew or not to renew the contracts of nontenure, probationary teachers. This does not mean that a board of education has any burden to establish or prove any statutory reasons for its decision not to renew, or any obligation to withhold or defer such a decision until a hearing is held. Under the statute, it is clear that a board of education has a right to decide not to renew such a contract without a hearing. However, if a board does decide not to renew, it must notify the teacher concerned in writing before March 1 of the school year in which the contract is not to be renewed for the following year, and upon receipt of such notice the teacher may require a statement of the reason or reasons for not renewing his contract.

When a teacher comes into possession of the statement of reasons why his contract is not to be renewed, he is then in a position to make a judgment as to his future course of action. He may, of course,

accept the decision, and many teachers doubtless do. On the other hand, if he feels that the reason or reasons for the decision not to renew are improper, unreasonable, arbitrary, unjustified, incorrect or unfair, he may ask for a hearing. The fundamental purpose of the hearing is to give a probationary teacher who has already been acquainted with the reasons why a board of education has decided not to renew his contract a full and fair opportunity to persuade and convince the board that it is mistaken in that decision. The teacher may attempt to answer or rebut the reasons given. He may attempt to show that the reasons given are mistaken in fact or are insufficient to justify the decision not to renew, and that it should be reversed and the teacher's contract renewed. It might well be that the teacher may be able to present to the board information or knowledge that it did not possess at the time of its original decision not to renew, and that such information or knowledge might materially affect the thinking of board members and the decision of the board.

It follows that under subsection (a) of § 10-151 a board of education has the statutory obligation to reconsider its decision not to renew a probationary teacher's contract in the light of all the information presented or disclosed at the hearing that may be relevant to such reconsideration. In order to fulfil this obligation properly and responsibly, it is the high duty of each member of a board of education to act with the utmost fairness and impartiality in making the required reconsideration. No member should have any qualms about changing his original vote not to renew if by reason of knowledge gained at the hearing he believes his original vote was mistaken. Otherwise the purpose of the statute would be frustrated. The board must act reasonably, fairly and intelligently, and to ensure that it does so, its

action must be subject to judicial scrutiny and review, and be dealt with according to law.

The construction of § 10-151 (a) above stated respects the statutory distinction between teachers who have achieved tenure for satisfactory service, and have thereby come under the statutory protective umbrella furnished for such teachers by § 10-151 (b), and teachers without tenure. It also gives real meaning and effect to the provisions of § 10-151 (a) granting to a probationary teacher the right to know the reasons why his contract is not to be renewed and the right to a hearing thereon, with the right to appear at such hearing with counsel of his own choice. Unless these provisions are made meaningful and effective, they are both lacking in value and illusory, in that they purport to grant rights that in practice will be meaningless.

The further question then is whether or not the plaintiff has been accorded his rights under the statute as herein construed, in the light of the facts developed and established at the trial, which must now be considered.

In the summer of 1961, the plaintiff was employed as an art teacher in the Meriden public school system for the school year 1961-1962, and his contract was renewed for the school years 1962-1963 and 1963-1964. During his incumbency as a teacher, he received many commendations for the performance of his work in particular respects. He also received the regular pay increments contained in the salary schedule for teachers in Meriden. Mark B. Bollman, the principal of Platt High School, where the plaintiff taught, was in frequent contact with the plaintiff, seeing him almost daily. He was also under observation by the assistant principal of the school and the art supervisor, who made oral reports to the

principal. Bollman talked with the plaintiff frequently in regard to his teaching problems.

Principal Bollman, as was his practice, made written evaluations of the plaintiff's teaching qualifications at the end of his first school year in June, 1962, and at the end of his second school year in June, 1963. He also made such an evaluation in December, 1963, covering the period between September and December, 1963. It was customary to prepare such evaluations respecting probationary teachers. The plaintiff's evaluations contained a substantial number of points on which the plaintiff was marked "Weak." Attached to the last evaluation was a "balance sheet" covering the plaintiff's entire employment between September, 1961, and December, 1963, which contained a list of "favorable" and "unfavorable" comments. The "unfavorable" were more numerous than the "favorable." A copy of the "balance sheet" was mailed to the plaintiff on December 27, 1963, together with a letter from Bollman.

On January 20, 1964, Bollman wrote a letter to Dr. George Magrath, superintendent of schools of the city of Meriden, in which he stated that he had reviewed the report covering the plaintiff's record and the experiences of the administrators of Platt High School in their dealings with incidents involving in-school activities, and had again discussed with the art supervisor the latter's observations of the plaintiff's school activities. He wrote he could not recommend that a contract for continued or permanent employment be awarded to the plaintiff. He said: "While there has been some evidence of improvement during the past year, and while Mr. Devlin has made a significant contribution to the production of art work in this school, these, in my judgment have not been sufficient to outweigh other factors."

During the course of the plaintiff's employment as an art teacher, the principal talked to him on a number of occasions in regard to his inadequacies as a teacher, and the plaintiff was well aware that his teaching qualifications were under careful observation and that a decision on whether or not to recommend him for continued employment would have to be made before March 1, 1964. Bollman's final recommendation was based on his lengthy experience as a qualified educator, his personal observation and the reports made to him by supervisory personnel.

On January 31, 1964, John D. Ivers, an attorney in Meriden, conferred with Bollman. Ivers stated that the plaintiff had consulted him professionally regarding the decision that the plaintiff would not receive a contract for the following year. Ivers indicated that he would ask for a hearing on the matter.

Dr. Magrath was familiar with the evaluation reports in respect to the plaintiff and knew of the principal's problems in respect to the plaintiff, as Bollman and he had had a number of lengthy conferences regarding the plaintiff. Bollman had told Magrath that the plaintiff had potential, and he wanted to give him every chance. Dr. Magrath, as superintendent of schools, reviewed the evaluation reports respecting the plaintiff and upheld the school principal's recommendation that the plaintiff's contract should not be renewed.

At an executive session of the board of education on February 3, 1964, Bollman's letter of January 20, 1964, was read, and the superintendent recommended that the board should "not rehire Mr. Devlin." It was unanimously so voted, after a discussion of the matter that lasted between twenty and twenty-five minutes. The board of education

acted on the basis of the superintendent's recommendation and his explanation of the reasons therefor, as well as Bollman's letter.

There are about 450 teachers in the Meriden school system under the jurisdiction of the board of education. It is the custom and practice of the board in respect to matters involving personnel to obtain information and opinions from the superintendent of schools and from the principal directly involved. The members of the board have very little personal knowledge as to the activities of any particular teacher.

On February 13, 1964, the superintendent of schools wrote to the plaintiff that the board of education "voted not to renew your contract for the school year 1964-1965." On February 14, 1964, Ivers wrote to the superintendent as follows: "In accordance with Mr. Devlin's rights under the General Statutes, will you please provide us with a statement in writing of the reason or reasons for such failure to renew his contract." The superintendent of schools, under date of February 21, 1964, advised the plaintiff in writing in part as follows: "From the beginning your classroom control has been weak. Extreme informality has been the rule. Your lesson plans have not been properly prepared, and at times you have had to send them in to school on a piece of paper when a substitute had to be called due to your illness. Pupils have sometimes been left unsupervised. Your 'housekeeping' is too often untidy, even for an art room. You have been too familiar with pupils to the extent they have called you 'Arty.' This complete informality has lessened your effectiveness as a teacher and has also contributed to the disciplinary problems of the school. In this regard, you have also been inconsistent in handling referrals of pupils to the office. [B]oth Mr. Bollman and Mr.

Potter [the art supervisor] have spoken to you about your inefficient handling of various situations, and improvement has not been as extensive as the administration would like to take place. Therefore, the administration could not recommend that your contract be renewed for the school year 1964-1965."

On February 24, 1964, Ivers wrote to the board of education in behalf of the plaintiff, requesting "a full hearing . . . on the matter of the decision not to renew his contract for the year 1964-1965." At an executive session of the board held on Monday, March 2, 1964, it was voted to hold a hearing on March 4, 1964, at 7.30 p.m. at the office of the board. This session of the board concluded at 12:25 a.m. on Tuesday, March 3, 1964, and notice of the time and place of the hearing was delivered to Ivers' office on the afternoon of that day.

The plaintiff claims that he was deprived of due process of law "[i]n particular [on the ground] there was no due notice of the hearing because the plaintiff and his attorney lacked sufficient and reasonable time to secure witnesses." Section 10-151 (a) provides that a teacher without tenure is "entitled to a hearing before the board to be held within fifteen days of" the teacher's request for a hearing, and such request must be made within ten days after the receipt by the teacher of the statement of reasons why his contract is not to be renewed. The plaintiff received the statement of reasons on February 22, 1964. His attorney requested a hearing by letter dated February 24, 1964, which was received on Tuesday, February 25, 1964. Accordingly, the mandate of the statute required that the hearing be held on or before Wednesday, March 11, 1964. Under the statute, the hearing could have been held on any day between Wednesday, February 26, and Wednesday, March 11. In fact, the request for a hearing was dis-

cussed by the entire board at the first board meeting after receipt of the request, and the only date within the statutory period on which all members of the board could be present—and it was the feeling of the members that all members of the board should attend the hearing—was the date chosen, Wednesday, March 4, 1964.

Admittedly, the time that elapsed between receipt of notice on the afternoon of March 3, 1964, and the time fixed for the hearing on March 4, 1964, at 7:30 p.m. was short. But it does not follow that it was prejudicial or was lacking in procedural or substantive due process. The plaintiff knew in January, 1964, that his contract was not to be renewed, and the reasons why. His attorney conferred with the school principal on January 31, 1964, in regard to the matter in detail. The attorney at that time said he would request a hearing. Obviously, the plaintiff and his attorney were in a position at that time to start to prepare for the hearing. More particularly, when the plaintiff's attorney sent a letter on February 24, 1964, requesting a hearing he then knew that under the statute the hearing had to be held on or before March 11, 1964. It is unfortunate that some persons whom the plaintiff wished to present in his behalf were not able to be present at the time selected by the board for the hearing, but the court cannot find that any fundamental unfairness to the plaintiff resulted. This conclusion is buttressed by the fact that the plaintiff testified they did start to prepare for the hearing on January 31, 1964. Furthermore, at the time of the hearing, the plaintiff's attorneys made no request for a continuance to enable them to produce persons desirous of appearing in behalf of the plaintiff.

The plaintiff complains in a number of respects in regard to the conduct of the hearing on March 4,

1964. The test which must be applied to this hearing is whether the plaintiff had a reasonable opportunity to hear and to be heard upon the question of the failure of the board to renew his teaching contract and whether the proceedings were conducted in a fair and impartial manner. See *Conley* v. *Board of Education,* 143 Conn. 488, 494.

The hearing started at 7:45 p.m. and continued until 12:45 a.m. the following morning, with a break of twenty-five minutes to permit the plaintiff and his attorneys to examine a number of papers in the school file respecting the plaintiff. No time limit was placed on the hearing, and the plaintiff was permitted to say all he wished to say. He was permitted to present all the witnesses he desired to present. When one of his attorneys was asked if he had any more people to call, he responded: "There are many people who are waiting to be called, but it would be a repetition of what has been said, and therefore I will not call them." Also, the plaintiff was permitted to read letters from fellow teachers into the record.

The court has scrutinized the excellent record of the hearing with care, and with particular regard to the plaintiff's specific claims of prejudice. It cannot find that the conduct of the proceedings was in any way arbitrary, unreasonable or unfair to the plaintiff. He was not deprived of any rights lawfully due him. He received the full benefit of the hearing to which he was entitled under § 10-151 (a). He was not accorded the procedures prescribed by subsection (b) of § 10-151 because he did not have tenure, and the legislature has not seen fit to confer the benefit of those procedures upon nontenure, probationary teachers.

At the conclusion of the hearing at 12:45 a.m., the board of education considered and discussed the

matter. A motion to reaffirm its previous vote not to renew the plaintiff's contract was carried, with one member opposed. The meeting was adjourned at 1:35 a.m.

In the opinion of the court, the board performed in full measure its statutory obligation to reconsider its previous decision. Nothing in the record of the hearing and nothing disclosed by the evidence at the trial indicates that the board did not act reasonably, fairly and intelligently, in consequence of the hearing, and there is no occasion for judicial interference with the board's decision upon reconsideration of its decision not to renew the plaintiff's contract. The issue before the board was not whether the plaintiff was to be discharged from his employment for any specific reason or reasons, but it was rather whether the plaintiff's contract should be renewed in the light of the matters brought out at the hearing. It was within the province of the board to reverse its original decision not to renew, and actually one member so voted, but it cannot be said that the board, acting reasonably, fairly and intelligently, was legally required to do so. Nothing brought out at the hearing commanded such action.

It was the duty and responsibility of the board to make a fair, reasonable and honest judgment. It is not the function of the court to interfere with such a judgment made upon the basis of information which was supplied both by authorized and competent school officials and by the plaintiff and his legal counsel. Under the circumstances, it is fair to assume that all available relevant information had been furnished to the board before its final decision was made.

Much is made in the plaintiff's brief of the board's reliance on the recommendation of the superintendent of schools, who in turn relied on the school

principal. Much is also made of the alleged failure of members of the board to study the documents in the plaintiff's school file. It is obvious that members of boards of education must necessarily rely to a considerable extent on the judgments and recommendations of the superintendent and principals of schools in respect to the professional competence and suitability of teachers. One of the paramount purposes in employing superintendents and principals is to obtain their informed and skilled opinions in respect to school personnel, and particularly in respect to the professional competence and suitability of teachers. This is not to say that the defendant members of the board of education of the city of Meriden relied blindly or improperly on such recommendations. The court is satisfied that they acted at all times in respect to the plaintiff in absolute good faith, reasonably and intelligently, and that they were not motivated by any improper influences or considerations.

And it may be said of the superintendent of the Meriden schools and the principal of Platt High School, who testified at the trial, that they appeared to the court to be men of integrity and high professional competence performing a difficult and distasteful task in having to recommend that the plaintiff's contract should not be renewed. In response to an inquiry by the court as to whether Bollman tried to help him improve as a teacher, the plaintiff answered, "Yes, I believe so."

One more claim made by the plaintiff should be noticed. It is that the "entire proceeding is tainted by the presence of an illegal document." This claim is occasioned by the fact that Bollman placed in the plaintiff's file a memorandum stating that the plaintiff "[d]id not join CEA or attend convention." "CEA" stands for Connecticut Education Associa-

tion, and the plaintiff's brief states that "another organization representing teachers, the American Federation of Teachers, through its Connecticut affiliate, . . . is supporting the plaintiff in this case." There is no occasion to rule whether the document in question is "illegal," as the plaintiff claims, because there is no possible basis in the evidence to find that the memorandum in question had any bearing or influence whatever on any action taken in respect to the plaintiff. The fact that the plaintiff was affiliated with a teachers' organization other than the Connecticut Education Association was not used for or against him.

It is the conclusion of the court that the plaintiff has not been deprived of any rights due him under § 10-151 of the General Statutes.

For the foregoing reasons, judgment may enter for the defendants to recover their costs.