M. Dean FLANDERS, Appellant,

v.

WATERLOO COMMUNITY SCHOOL DISTRICT et al., Appellees.

No. 56284.

Supreme Court of Iowa.

April 24, 1974.

Dreher, Wilson & Adams, Anna I. Shinkle and John R. Hearn, Des Moines, and Fulton, Frerichs, Nutting & Kennedy and Kennedy, Kepford, Kelsen & White, Waterloo, for appellant.

Reed, Merner, Sindlinger, Baker & Sabbath, Cedar Falls, for appellees.

Heard before MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves the sufficiency of proceedings to terminate the contract of a public-school principal. The appeal does not involve the merits of the dispute regarding the principal's services.

M. Dean Flanders served as principal of a public school under a contract with the Waterloo Community School District, Waterloo, Iowa. He knew that the school board was dissatisfied with his services. On occasion he made statements that he would resign if the board would let him know and that he was looking for another school or a graduate school. He was in touch with a representative of an education association and knew that the school board could refuse to continue his contract for the next year by pursuing proper procedure.

Regarding such contracts, the legislature provided in the relevant part of § 279.13, Code 1971:

> Said contract shall remain in force and effect for the period stated in the contract and thereafter shall be automatically continued in force and effect for equivalent periods . . . until terminated as hereinafter provided. . . . [T]he board may by a majority vote of the elected membership of the board, cause said contract to be terminated by written notification of termination, by a certified letter mailed to the teacher not later than the tenth day of April; provided, however, that at least ten days prior to mailing of any notice of termination the board or its agent shall *inform the teacher in writing* that (1) the board is considering termination of said contract and that (2) the teacher shall have the right to a private conference with the board if the teacher files a request therefor with the president or secretary of the board within five days; and if within five days after receipt by the teacher of such written information the teacher files with the president or secretary of the board a written request for a conference and a written statement of specific reasons for considering termination, the board shall, before any notice of termination is mailed, give the teacher written notice of the time and place of such conference and at the request of

the teacher, a written statement of specific reasons for considering termination, and shall hold a private conference between the board and teacher and his representative if the teacher appears at such time and place. . . . In event of such termination, it shall take effect at the close of the school year in which the contract is terminated. . . . The term "teacher" as used in this section shall include all certified school employees, including superintendents. (Italics added.)

Under the statute, ordinarily the last day a board or its agent can possibly "inform the teacher in writing" is March 31, for the informing must be done at least ten days before the certified letter of termination is mailed and the certified letter must be mailed not later than April 10. See Code 1971, § 4.1(23) (computing time).

Mr. Flanders and the board were unable to reconcile their differences about his services. Up to March 30, 1972, the board had not informed Mr. Flanders in writing pursuant to § 279.13, so as to set the wheels in motion for a private conference and a statement of reasons for considering termination. School was held on March 30, 1972. Mr. Flanders attended but was not informed of contemplated termination. On that day the board caused a written "Notice of Consideration of Termination of Teacher's Continuing Contract" to be mailed to Mr. Flanders by certified mail, addressed to him at his home address.

The next day, March 31, was Good Friday and the first day of Easter vacation for the school. That day Mr. Flanders had an advance appointment to see the representative of the education association about Mr. Flanders' school problem. Mr. and Mrs. Flanders spent the forenoon and part of the afternoon with the representative and had lunch with him. They then shopped and arrived home about 5:30 p.m.

Also on March 31, a postman brought the certified letter to the Flanders' home but, finding no one to receive it, left a no-

tice for Mr. Flanders to pick up the letter at the post office. The postman returned the letter there. The notice stated that the letter was from Personnel, Waterloo Community Schools, but contained no information about the contents of the letter itself. When Mr. and Mrs. Flanders arrived home on March 31, they found the notice. Mr. Flanders had a "pretty good idea" what the letter was. However, the post office was then closed, as it was the next two days also. Mr. Flanders never claimed the letter.

On April 10, 1972, the board mailed Mr. Flanders notice of termination of his contract, by certified mail. He received this notice.

Mr. Flanders then brought an action for a declaratory judgment that the attempted termination of his contract was void. He alleged several grounds. After trial, the trial court found against him on all grounds and dismissed his petition. He appealed, confining his appeal to the sole ground that the board did not timely inform him in writing under the statute.

The arguments range quite widely into areas of waiver, estoppel, deliberate avoidance of receiving notice, and refusal to accept a proffered notice or to read a notice which is received. These theories are not asserted, however, as independent grounds for reversal or affirmance. We find no necessity to consider them anyway, as they are not supported by substantial evidence. The questions which we must decide are these: (1) Is the statutory requirement to "inform" satisfied by timely mailing irrespective of the time of receipt by the addressee? (2) Is the statutory requirement to inform in writing excused here?

■ I. *Mailing vs. Receiving.* At the outset we note that the steps to be taken by the board are at statutorily mandated dates and times. Those dates and times must therefore be observed; we cannot judicially supersede them by times which we might deem "reasonable." Baker v. Cedar Falls, 185 N.W.2d 810 (Iowa); School

Dist. No. 6 v. Barber, 85 Ariz. 95, 97, 332 P.2d 496, 498 ("If we extend this date to the 16th or the 18th, or to such other time as we might believe to be reasonable, the unambiguous language of the legislature is set aside."). We think, too, that the requirement to inform is a prerequisite to terminating a contract, at least in the absence of circumstances which are not present here. The legislature placed this requirement in the law for a purpose. Devlin v. Bennett, 26 Conn.Sup. 102, 111, 213 A.2d 725, 731 ("The teacher may attempt to answer or rebut the reasons given. He may attempt to show that the reasons given are mistaken in fact or are insufficient to justify the decision not to renew, and that it should be reversed and the teacher's contract renewed."). Our duty is to carry out the statute. Scheelhaase v. Woodbury Central Community School Dist., 349 F.Supp. 988 (N.D.Iowa); School Dist. No. 6 v. Barber, supra; Tsakiris v. Phoenix Union High School System, 18 Ariz.App. 416, 502 P.2d 1093; Weckerly v. Mona Shores Board of Education, 388 Mich. 731, 202 N.W.2d 777. See also Ramey v. Des Moines Area Community College, 216 N.W.2d 345 (Iowa); McGuffin v. Willow Community School Dist., 182 N. W.2d 165 (Iowa).

The parties agree that notice of termination was properly given by the certified mailing on April 10. They agree also that the last day to inform Mr. Flanders in writing was March 31. But they disagree completely about the word "inform."

To inform means "to communicate knowledge to: make acquainted: tell, advise, enlighten. . . . Inform implies the imparting of knowledge, esp. of facts or events necessary to the understanding of a pertinent matter. . . ." Webster's Third New International Dictionary (1969). See National City Bank of Rome v. Graham, 105 Ga.App. 498, 125 S.E.2d 223.

■ Decisions involving a requirement to "notify" or to "give notice" are suffi-ciently analogous to be persuasive here. The general rule is that when a statute or other provision does not expressly authorize notice by publication, mail, or some other specified method, but requires a person to notify in writing or to give written notice, then the method of transmitting the writing to the recipient is not important but receipt of the writing by the one to be notified is essential—absent circumstances which we do not now have. Wheeler v. McStay, 160 Iowa 745, 141 N.W. 404; North v. Kinney, 231 Iowa 951, 2 N.W.2d 407; Selken v. Northland Ins. Co., 249 Iowa 1046, 90 N.W.2d 29; Eves v. Iowa Employment Security Comm'n, 211 N.W.2d 324 (Iowa); School Dist. No. 6 v. Barber, 85 Ariz. 95, 97, 332 P.2d 496, 497 ("in the absence of custom, statute, or express contract, a notice sought to be served by mail is not effective until it comes into the hands of the one sought to be served"); 58 Am.Jur.2d Notice § 22 at 504 ("Where a statute requires notice to be given, it is the general rule of law that actual personal notice is required"); 66 C.J.S. Notice § 18 at 661 ("where a statute directs that notice in writing shall be given but prescribes no method of service, ordinarily it is sufficient to show that the party to be notified actually received written notice, and that the method is unimportant"); NLRB v. Vapor Recovery Systems Co., 311 F.2d 782, 785 (9 Cir.) ("the risks inherent in the means employed to transmit the written notice fall on the party giving the notice. . . . Since the means of transmission are unimportant, it would appear that there is in fact only one rule, to wit: where the means of giving notice are not specified, the notice is effective when received").

A case similar to the present one is Weckerly v. Mona Shores Board of Education, 388 Mich. 731, 734, 202 N.W.2d 777, 780. The statute required that a teacher be "notified in writing" at least 60 days before the end of the school year in order to terminate his contract. The board timely sent the teacher a notice by certified mail, but the teacher was away and a post-

man left a mail-arrival notice. The letter was not actually delivered to the teacher 60 days or more before the end of the year. The Michigan Supreme Court held the contract was not terminated, saying that

> the postman's leaving the notice of attempted delivery of the letter enclosing the written notice is not providing the written notice, which was returned to the post office.

> Since the actual delivery of the letter to the teacher's residence did not occur "60 days before the close of the school year," the written statement was not provided or supplied for use on time.

■■ We hold in the present case that the requirement to "inform the teacher in writing" requires the writing to be received in time, however it may be transmitted—barring circumstances such as refusal to receive in time which are not present here. Mr. Flanders did not receive the writing at least ten days prior to the mailing of notice of termination by the board, and the board's action was therefore ineffective.

■ II. *Requirement Excused?* The board contends that even if the statute ordinarily requires the writing to be received by the teacher, here the principal knew the board intended to terminate his contract and so a written communication was an idle formality, which the law does not require.

We have no occasion to consider whether situations may exist in which the provisions of the statute are excused. This is not one of them. This situation depicts the typical jangle between a teacher and a board which the statute was intended to reach. To bring some order to the contract-renewal situation and to afford teachers a measure of job security, the legislature prescribed a system for terminating contracts. A board considering termination has the responsibility of timely informing the teacher in writing of that fact

and of the teacher's right to a private conference on request. By following the statutory procedure, the teacher may then have the conference and also a written statement of the board's reasons.

If the board's duties under the statute were nullified simply by the teacher's knowledge that the board intended to terminate, the very purpose of the statute—to give the teacher a chance to try to turn the board's thinking around—would be frustrated. Indeed the teacher may have been told point blank that the board intends to fire him. He nonetheless has his statutory right to be timely informed in writing so that he can initiate the procedure for a private conference and a written statement of the specific reasons. The court stated in Newton v. Calhoun County School Dist., 232 Ark. 943, 945, 341 S.W.2d 30, 32, "The statutory requirement of written notice is an important safeguard to the teacher's standing and security. As we said in the Sirmon case [Sirmon v. Roberts, 209 Ark. 586, 588, 191 S.W.2d 824, 825]: 'One obvious purpose of the statute requiring written notice was elimination of uncertainty and possible controversy regarding the future status of a teacher and a school.'" And as the court remarked in Devlin v. Bennett, 26 Conn.Sup. 102, 111, 213 A.2d 725, 731, "It might well be that the teacher may be able to present to the board information or knowledge that it did not possess at the time of its original decision not to renew, and that information or knowledge might materially affect the thinking of board members and the decision of the board." See also Common School Dist. No. 27 v. Brinkmann, 233 S.W.2d 768 (Mo.App.).

Certainly the language of our statute does not indicate that actual knowledge by the teacher supplants compliance with the requirements by the board. Cf. Spencer Concrete Products Co. v. Spencer, 254 Iowa 87, 116 N.W.2d 455. The relevant paragraph of § 279.13 opens with the words, "Said contract shall remain in force and effect for the period stated in the con-

tract and thereafter shall be automatically continued in force and effect for equivalent periods . . . until terminated as hereinafter provided. . . ." Then follow the modes of termination including the one involved here.

We hold that Mr. Flanders' actual knowledge of the board's intention, if he had such knowledge, did not take the place of compliance with the statute by the board.

The board did not comply with the requirements of § 279.13 and did not terminate the contract. We return the case to district court for trial on damages.

Reversed and remanded.